## In re CORPORATE JET AVIATION, INC.

## CORPORATE JET AVIATION, INC., Appellant,

v.

## Charles D. VANTRESS, Appellee.

Civ. A. No. C86–2649A.
Bankruptcy No. 81–05249A.
Adv. No. 82–0651A.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 2, 1987.

James J. Brissette, Hurt Richardson Garner Todd & Cadenhead, J. Michael Lamberth, Palmer Lamberth Bonapfell & Cifelli, Atlanta, Ga., for Corporate Jet Aviation, Inc., debtor/appellant.

David G. Russell, Kutak Rock & Campbell, Atlanta, Ga., for Charles D. Vantress, appellee.

## ORDER

ROBERT H. HALL, District Judge.

This is an appeal from two orders of the bankruptcy court, 57 B.R. 195 and 45 B.R. 629, in which the court found, among other things, that: (1) appellant, Corporate Jet Aviation ("CJA"), did not fraudulently transfer $450,000 to its then-minority shareholder, appellee, Charles Vantress

("Vantress"), in violation of 11 U.S.C. § 548; and (2) CJA's redemption of Vantress' stock in CJA did not violate former Georgia Code Section 22–514 (now codified at Ga.Off'l Code Ann. § 14–2–93). For the reasons stated herein, the court AFFIRMS the bankruptcy court's orders.

## FACTS

CJA filed this proceeding on March 18, 1982 seeking to recover $450,000 paid to Vantress when it redeemed his 350 shares of CJA's common stock on April 1, 1981. Only Counts I and II of CJA's complaint are relevant to this appeal. In Count I, CJA claimed that the stock redemption was a fraudulent conveyance under section 548 of the Bankruptcy Code because CJA allegedly "received less than a reasonably equivalent value in exchange" for the transfer of the $450,000. 11 U.S.C. § 548(a)(2)(A). In Count II CJA claimed that the redemption violated former Georgia Code Section 22–513 which prohibits a corporation from purchasing its own shares "for any purpose at a time when a corporation is solvent or when such purchase or payment would make it insolvent." Ga. Off'l Code Ann. § 14–2–92(e).

The transactions at issue in this case began in early 1981 at a time when CJA's financial strength was suffering from rising interest rates and a general downtown in economic conditions. Prior to and during early 1981 CJA operated, among other things, a "fixed base" facility at Peachtree–DeKalb Airport in DeKalb County, Georgia where it sold and serviced general aviation aircraft. Richard H. Brannan ("Brannan"), CJA's president, owned 62% of CJA's stock and Vantress owned the remaining 38%. In early 1981, Frank W. Hulse IV ("Hulse"), then president of Hangar One, Inc. ("Hangar One"), approached Brannan and expressed an interest in acquiring CJA's facility at Peachtree–DeKalb Airport. Hulse advised Brannan that Hangar One required clear title to CJA's assets and did not want problems with CJA's minority shareholder.

Brannan and Edward Carter, CJA's attorney, approached Vantress and proposed that CJA redeem Vantress' 350 shares of stock for $450,000. Appellant contends that CJA proposed the stock redemption because Vantress desired to leave the company. The bankruptcy court found that the stock redemption was intertwined with the sale of CJA's assets to Hangar One, and indeed facilitated the sale of assets to Hangar One. The bankruptcy court further found that CJA received reasonably equivalent value for the $450,000 transfer by its receipt of: (1) Vantress' 350 shares of CJA stock which had value at the time of the transfer because CJA was solvent at the time; (2) the increased consideration and other benefits which flowed to CJA in connection with the asset sale to Hangar One which resulted in CJA's receipt of $1,200,000 in cash, a note from Hangar One for $550,000 and Hangar One's assumption of CJA's liabilities in the sum of $1,769,583; (3) Vantress' waiver and release of his Georgia statutory right to dissent to the asset sale and thereby receive the fair market value of his stock; and (4) Vantress' waiver and release of his rights under a shareholders' agreement. With regard to Count II of CJA's complaint, the court found that the stock redemption was an arms-length transaction which did not render CJA insolvent.

## DISCUSSION

 In this appeal, although appellant argues to the contrary, this court must accept the bankruptcy court's findings unless they are clearly erroneous. *In re Greenbrook Carpet Co., Inc.*, 722 F.2d 659 (11th Cir.1984). The test, therefore, "is not whether a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings." *In the Matter of Garfinkle*, 672 F.2d 1340, 1344 (11th Cir.1982) (*quoting Highland Village Bank v. Bardwell*, 610 F.2d 228, 230 (5th Cir.1980)). Not only will findings of fact not be set aside unless clearly erroneous, but "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013.

CJA argues on appeal that the bankruptcy court erred in finding that Vantress'

stock was worth something when it was redeemed by CJA. Appellant apparently made the same argument to the bankruptcy court because, in its order, the court recognized that "in most cases, courts have found that stock redemptions fail to supply reasonably equivalent value." January 23, 1986 Order at 4. The bankruptcy court conducted a full evidentiary hearing on the issue, however, and found that, because CJA was solvent at the time of the transfer, the redemption was conditioned upon the sale of assets to Hangar One, and Brannan, not Vantress, valued the shares at $450,000, an amount which represented approximately 40% of the value of CJA's expected assets following the sale of Hangar One, the stock itself did have value and was not worthless.

■ The bankruptcy court noted that the value of the 350 shares alone probably did not reach $450,000. The court found, however, that in conjunction with Vantress' waiver and release of his rights and the economic gain to CJA as a result of the sale of assets to Hangar One, CJA received value substantially equivalent to the $450,000 it transferred. CJA asserts that the bankruptcy court erred in finding that the stock redemption and sale of assets to Hangar One were interdependent and that CJA was motivated to redeem the stock by the valid business purpose of facilitating the asset sale. This court has carefully reviewed the record and finds that there is sufficient evidence to support the bankruptcy court's findings that proceeds of the asset sale were higher than they might have been had CJA not redeemed Vantress' stock and that CJA itself considered the redemption valuable and necessary to secure the sale of assets to Hangar One. *See e.g.*, Transcript of Proceedings before the Honorable W. Homer Drake, December 19,

1985, pp. 30–33; Deposition of Frank W. Hulse IV.

CJA further asserts that the bankruptcy court erred in concluding that "value" within the meaning of section 548 of the Bankruptcy Code can include such intangible property as Vantress' waiver and release of his statutory and shareholder agreement rights. CJA argues that the "value" to which section 548 speaks can only include resources available to a debtors' creditors to satisfy their claims. Even if CJA is correct in its construction of section 548 and the definition of "value" under the section, the bankruptcy court found that CJA realized a gain of $1,909,803 in the sale of assets to Hangar One, which reflected a *net* gain of $1,338,883 after deducting taxes and the $450,000 transferred to Vantress in redemption of his stock.

■ The bankruptcy court found that the asset sale resulted in a decrease in CJA's expenses and interest payments and an increase in its assets thus providing resources available to CJA's creditors. And, as this court noted above, the bankruptcy court was not clearly erroneous in finding that the asset sale was facilitated by the stock redemption. *Cf., Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir.1981) (in construing predecessor to § 548(a)(2)(A), court found that if the giving of consideration to a third person confers an economic benefit on the debtor, then debtor's net worth is preserved and transaction cannot be set aside). Moreover, in return for the transfer of $450,000, CJA received Vantress' waiver of his right to receive a higher sum for his shares. By avoiding a larger pay-out to Vantress, CJA maintained a larger estate from which its creditors could satisfy their claims.[1]

---

1. This court, by addressing appellant's argument regarding the definition of "value" within the meaning of section 548, does not thereby find that the bankruptcy court erred in finding that "section 548, by its terms, does not specify that reasonably equivalent value is limited to value to the creditors of the debtor. Instead, the statute speaks of reasonably equivalent value in terms of value 'to the debtor.'" January 23,

1986 Order at 5. Indeed, section 548 provides that a transfer may be avoided if the *debtor* received less than a reasonably equivalent value in exchange for the transfer. The Eleventh Circuit in *Greenbrook, supra,* seemed to suggest that, in determining whether the debtor received substantially equivalent value in exchange for transferring an interest in its property, the court should ascertain whether the *trans-*

■ The bankruptcy court, after conducting a full evidentiary hearing, made findings of fact regarding whether CJA received reasonably equivalent value in exchange for its transfer to Vantress of $450,000. The bankruptcy court found that, in combination, the stock itself, the waivers by Vantress of his rights, and the sale of assets to Hangar One provided CJA with value substantially equivalent to the $450,000 it transferred to Vantress. The court further found that the stock redemption did not render CJA insolvent. In its order the bankruptcy court thoroughly reviewed the evidence and testimony regarding CJA's financial status immediately preceding and during the months following the stock redemption. The bankruptcy court judged the credibility of the witnesses and weighed all the evidence and concluded that, although CJA was having financial problems, it was not insolvent or, in other words, it was able to pay its debts as they came due in the usual course of business.

Contrary to appellant's assertion, the court based its finding that CJA was not rendered insolvent by the stock redemption on a variety of factors including the accountant's report, the liquidity ratios presented at trial, and the availability of assets convertible into cash. Upon review of the record, this court also learned that CJA's bank accounts showed positive balances for the month ending March 31, 1981, one day before the stock redemption and for several months following the redemption. This court finds that there was sufficient evidence in the record to support the bankruptcy court's conclusion that the stock redemption did not render CJA insolvent.

For these reasons, the court AFFIRMS the orders and judgment of the bankruptcy court.

---

*feree* received more consideration than it was due. *Greenbrook,* 722 F.2d at 661. In *Greenbrook* the transferee (a bank) had loaned money to the debtor for a highly speculative venture. Although the money loaned passed directly to the debtor's principals in exchange for worthless security in the hands of the debtor and, although the bank knew the money would be used for a speculative venture, the transfers of money by the debtor to the bank in repayment of the loan were not found to be fraudulent. Although the debtor-corporation did not have use of the money loaned by the bank, the payments by the debtor to the bank were not rendered invalid because the *bank* did not thereby receive more consideration than it was due. Given this analysis of section 548, it appears the bankruptcy court did not err in finding that CJA received substantially equivalent value when Vantress waived his rights and turned his stock over to CJA. By taking that action, Vantress did not receive more consideration than he was due when he received $450,000 from CJA.