In re Levander and Elnora
McKEEVER, Debtors.

Levander and Elnora McKEEVER,
Plaintiff,

v.

Joe Ann McCLANDON d/b/a BMJ Company, Michael Harvey and Lake Shore National Bank, Defendants.

Bankruptcy Nos. 89 B 13233, 90 A 52.

United States Bankruptcy Court
N.D. Illinois.

Oct. 29, 1991.

David S. Yen, Timothy J. Huffman, Legal Assistance Foundation of Chicago, Englewood Office, Chicago, Ill., for plaintiff.

Mitchell Cohen, Brown & Shinitzky, Chicago, Ill., for defendants.

Donald E. Johnson, Trustee, Hollis & Johnson, Chicago, Ill.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the Debtors' Amended Complaint to Recover Money or Property from Co–Defendants McClandon, Harvey and Lake Shore National Bank. The debtors seek to avoid and recover their former residence which was transferred to McClandon in a tax deed proceeding conducted under Illinois law. The defendant McClandon has filed a motion to dismiss the amended complaint on the grounds that it fails to state a cause of action upon which relief can be granted. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(H) and 28 U.S.C. § 1334. The parties have submitted memoranda of law in support of their arguments and this matter was taken under advisement by the Court. Having fully considered the submissions of the parties, the Court hereby finds that Count II and Count III of the Amended Complaint fail to state a cause of action and orders that these Counts be dismissed pursuant to Bankruptcy Rule 7012 and Federal Rule of Civil Procedure 12(b)(6). The Court further orders that defendant's motion is denied as to Count I.

## FACTS

The debtors herein, Levander and Elnora McKeever, were the owners and residents of a single family home, located at 9021 South Bishop, Chicago, Illinois, which they purchased in 1972. In 1985 the debtors borrowed $21,000 from Michael Harvey and granted him a mortgage against the property. This mortgage was recorded with the Recorder of Deeds of Cook County, Illinois, in August 1985. Additionally, Lake Shore National Bank claims a second mortgage on the property which is disputed by the debtors.

Debtors failed to pay the second installment of real estate taxes for 1984 which were due in August 1985. Pursuant to the provisions of the Revenue Act of 1939, Ill.Rev.Stat. ch. 120, ¶ 482 et seq. (1989), relating to liens against and sales of real property for nonpayment of state real estate taxes, a tax sale was held and the delinquent second installment of 1984 real estate taxes was purchased by Joe Ann McClandon, an unrelated third party. Upon payment of unpaid taxes, interest, costs and fees, totaling $560.17, McClandon was granted a Certificate of Purchase by the Clerk of Cook County, on January 14, 1986, which became a lien on the property.

The debtors took no action to redeem the unpaid taxes and on April 13, 1988, McClandon filed an Application for Issuance of a Tax Deed in the Circuit Court of Cook County, Illinois. In connection with this procedure, notice was served upon the debtors informing them that McClandon's lien for the purchase of the delinquent second installment of 1984 taxes had not been satisfied, and that unless such lien was redeemed no later than August 10, 1988, a petition would be brought before the Circuit Court of Cook County requesting that a Tax Deed for the property be issued to McClandon. The complaint alleges that such notice was sent only to the debtors and not to the other parties holding liens on this property, Harvey and Lake Shore National Bank.

No party took any action to redeem the property from McClandon's tax lien within the allotted time and an order was issued by the Circuit Court of Cook County on August 30, 1988 directing the Clerk of Cook County to issue a tax deed to McClandon. As part of this procedure, McClandon was required to pay $4,645.11, representing

all unpaid taxes for subsequent years that became due after the date she purchased the 1984 delinquent taxes. The Clerk of Cook County thereafter issued the Tax Deed to McClandon on September 8, 1988, as ordered.

No further action was taken in this matter until January 25, 1989, when McClandon moved in the Circuit Court of Cook County for an order evicting the McKeevers from the property. An order of possession was granted to McClandon and the debtors were evicted by the Sheriff of Cook County on April 15, 1989.

Approximately four months later, on August 10, 1989, the debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code. In their Schedule A-3, *Unsecured Creditors Without Priority*, debtors listed Joe Ann McClandon, in the amount of $6,218.75, with the notation that the debt may be entitled to secured status if the transfer of the debtors' former home at 9021 South Bishop were avoided. Likewise, Michael Harvey was listed as having a claim for $21,000, with the notation that he may be entitled to secured status upon avoidance of the transfer of home, and Lake Shore National Bank was listed in the amount of $6,073.20 as a disputed claim which, if valid, may be entitled to secured status upon avoidance. On Schedule B-1, *Statement of Real Property*, the debtors listed the property at 9021 South Bishop as real property in which they held an interest in the form of a right to recover the property transferred for less than reasonably equivalent value.

In their amended complaint, the debtors claim the payment of $4,645.11 in back taxes represents only 9.3% of the property's fair market value, alleged to be $50,-000, resulting in an avoidable transfer for less than reasonably equivalent value. Section 548 grants this avoidance power to the trustee. The trustee appointed to administer the debtors' assets, however, declined to bring a § 548 or any other type of avoidance action in this case. At the pretrial conference the trustee indicated that he had taken a "no-asset" position due to the small amount of equity, if any, which

would be left for unsecured creditors after payment of secured claims and the debtors' homestead exemption. Since the trustee did not assert the § 548 avoidance powers, the debtors themselves attempt to do so by virtue of § 522(h)(1) of the Bankruptcy Code.

The debtors filed an adversary complaint on January 22, 1990, which was later amended, seeking avoidance and turnover of the property on three grounds. First, the debtors assert that the transfer of their home by tax deed was a transfer for less than reasonably equivalent value, in that the total tax payment of $4,645.11 is approximately 9.3% of the $50,000 fair market value claimed by the debtor which could have been avoided by the trustee pursuant to § 548(a)(2), and thus § 522(h)(1) allows debtors to exercise the trustee's power to avoid the transfer to the extent of their homestead exemption. Second, debtors claim the transfer was invalid under Illinois law for failure to comply with the tax deed procedure requiring notice to all interested parties, specifically Michael Harvey. Lastly, the debtors allege to the extent that Illinois law does not require notice of the proceedings to be given to Harvey, such procedure is an unconstitutional deprivation of property in violation of the United States Constitution, making the transfer voidable by the trustee on behalf of an unsecured claimant pursuant to § 544(b), and thus the debtors can avoid it to the extent of their exemptions pursuant to § 522(h)(1).

The defendant tax sale purchaser McClandon has moved to dismiss the amended complaint for failure to state a cause of action under which relief can be granted. The defendant first mortgagee, Michael Harvey, filed an answer to the debtor's amended complaint which contains a prayer for relief asking that his position as mortgagee and first lienholder be maintained in priority ahead of McClandon.

## DISCUSSION

The debtors have filed an amended adversary complaint seeking to avoid the transfer of their property by tax deed to the tax sale purchaser, on the grounds that

they are entitled to a homestead exemption under Illinois law and this right of exemption allows them under §§ 522(g), (h) and (i) of the Bankruptcy Code to use the trustee's avoidance powers to set aside the tax deed transfer, recover the property and claim their homestead exemption. Defendant McClandon, the tax deed transferee, has filed a motion to dismiss the amended complaint for failure to state a cause of action on the grounds that (1) the debtors are not entitled to a homestead exemption under Illinois law which would allow them, under § 522, to use the trustee's avoidance powers to avoid a lien or transfer impairing such exemption when the trustee fails to do so, and (2) the tax deed transfer is not avoidable under any of the avoidance powers set forth in §§ 544, 545, 547, 548 or 549.

Pursuant to Bankruptcy Rule 7012(b), Rule 12(b)(6) of the Federal Rules of Civil Procedure applies to motions to dismiss adversary actions in bankruptcy proceedings for failure to state a claim upon which relief may be granted. A movant will prevail on a Rule 12(b)(6) motion only when, even assuming "the well pleaded factual allegations of the complaint and all reasonable inferences [most favorable to the plaintiff] which follow from the allegations are true," the complaint does not state a cause of action upon which relief may be granted. *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir.1989). The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Id.* In ruling on the defendant's motion to dismiss, the Court will therefore assume that the facts pled in the debtors' complaint and the reasonable inferences most favorable to the debtor which follow therefrom are true.

## I. DO THE DEBTORS HAVE A HOMESTEAD EXEMPTION UNDER ILLINOIS LAW WHICH WOULD ENABLE THEM TO USE §§ 522(g), (h) & (i) TO AVOID THE TAX DEED TRANSFER USING THE TRUSTEE'S AVOIDANCE POWERS?

Section 522(g) states "[n]otwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c), 542, 543, 550, 551 or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1) (A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section."

This provision allows the debtor to exempt: (1) eligible property recovered by the trustee through equitable subordination, property of the estate recovered through turnover from third parties or a custodian, property recovered through the exercise of the trustee's transfer avoidance and recovery powers, or through the avoidance of a preferential setoff; (2) to the extent the debtor could have exempted such property if the transfer had not been made; (3) when the transfer was involuntary; and (4) the debtor did not conceal the property.

■ Section 522(h) supplements this right of exemption for property recovered by the trustee by authorizing the debtor to use the trustee's avoidance and recovery powers when the trustee does not attempt an avoidance action. Section 522(h) states: "the debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if (1) such transfer is avoidable by the trustee under § 544, 545, 547, 548, 549 or 724(a) of this title or recoverable by the trustee under § 553 of this title; and (2) the trustee does not attempt to avoid such transfer." Thus, when the trustee fails to bring an avoidance action on an involuntary transfer in which the debtor did not conceal the property transferred, the debtor may use the trustee's powers to avoid the trans-

fer to the extent he could have exempted the property if it had not been transferred. Likewise, § 522(i) extends the trustee's recovery powers under § 550 to the debtor and allows the debtor to exempt eligible property so recovered and provides that an avoided transfer may be preserved for the benefit of the debtor to the extent of his exemptions.

Under these provisions, the debtor is given the power to protect his exemptions when the trustee fails to pursue such avoidance actions. A trustee would have no incentive to seek avoidance of a transfer involving wholly exempt or wholly encumbered property since such a recovery would produce no benefit to the estate. In order to protect the debtor's exemptions, it is necessary to allow him to pursue such an action for his own benefit. *Deel Rent–A–Car, Inc. v. Levine*, 721 F.2d 750, 757 (11th Cir.1983). Standing to use such powers necessarily depends upon the existence of exemption rights. Property which is not eligible for exemption cannot be brought back into the estate by the debtor under § 522(h). When dealing with the federally approved exemptions, the § 522(h) avoidance powers are easily applied uniformly. The Bankruptcy Code, however, allows states to opt-out of the federal exemptions and create their own exemption scheme. Thus, a debtor's standing to assert the § 522(h) avoidance powers may vary from state to state. State law must be examined to determine whether the debtor could exempt the property recovered if the transfer were avoided. In this matter, the defendant tax sale purchaser has filed a motion to dismiss on the grounds that the debtors are not entitled to assert a homestead exemption against a tax sale purchaser under Illinois law and thus the debtors have no standing to rely upon the § 522(h) avoidance powers.

Illinois has opted out of the federal exemptions set forth in § 522(b) and enacted an alternative set of exemptions. Ill.Rev. Stat. ch. 110, ¶ 12–1201 (1989).[1] Among the other exemptions allowed, Illinois law provides for a homestead exemption in Ill. Rev.Stat. ch. 110, ¶ 12–901 *et seq.* (1989). Paragraph 12–901 provides that the homestead estate of every individual shall be exempt from attachment, judgment, levy or judgment sale for the non-payment of debts. The exemption granted therein consists of "an estate of homestead to the extent in value of $7,500 in the farm or lot of land and buildings thereon, a condominium, or in personal property owned or rightly possessed by lease or otherwise, and occupied by [debtors] as a residence, or in a cooperative that owns property that the individual uses as a residence...." *Id.*

Despite this broad definition of the homestead exemption, ¶ 12–903, entitled "Extent of Exemption," restricts its application in certain situations. Paragraph 12–903 states: "No property shall, by virtue of Part 9 of Article VI of this Act, be exempt from sale for non-payment of taxes or assessments, or for a debt or liability incurred for the purchase or improvement thereof, or for enforcement of a lien thereon for non-payment of common expenses pursuant to the Condominium Act [citation omitted]." Under this provision, it appears that the debtors would not be able to assert a homestead exemption against a tax sale purchaser. The defendant tax sale purchaser argues that the debtors therefore have no standing to utilize the § 522(h) avoidance powers. According to the defendant: (1) the Illinois Revenue Act clearly provides for priority of tax liens, incontestability of tax deeds, and merchantability of title acquired by tax deed to further certainty in tax deed transactions; (2) these provisions were intended by the legislature to preclude the type of action brought by the debtor; and (3) the decision of the Illinois legislature to opt out of the federal provisions and restrict its homestead exemption must be upheld by the Bankruptcy Court.

The proper application of § 522(h), however, requires a careful reading of both the

---

1. Paragraph 12–1201 provides: "In accordance with 11 U.S.C. § 522(b), residents of this state shall be prohibited from using the federal exemptions provided in § 522(d) ... except as may be otherwise provided under the law of Illinois." Ill.Rev.Stat. 110, ¶ 12–1201 (1989).

Illinois homestead exemption and the § 522(h) avoidance powers. Section 522(h) incorporates subsection (g) to provide that the debtor may use the trustee's powers to avoid a transfer and recover property which *could have been exempted if such property had not been transferred* (emphasis added). The transfer which the debtor seeks to avoid is a transfer for non-payment of taxes and § 522(h) provides that the transfer may be avoided to the extent the debtors could have exempted the property if the transfer had not occurred. Although Illinois law precludes the assertion of such an exemption in a sale of the property for non-payment of taxes, the debtors could have exempted a homestead estate in value of $7,500 each under Illinois law if there had been no tax deed issued. Under the literal language of § 522(h), therefore, the debtors may avoid the transfer to that extent.

Section 522(h) focuses on whether an exemption would be available if the transfer to be avoided had not occurred. The defendant tax sale purchaser argues to the contrary that the Court must ask whether an exemption exists under state law independent of the avoidance action. This argument ignores the literal language of the Bankruptcy Code and has been rejected by numerous courts. In *Deel Rent–A–Car v. Levine*, 721 F.2d 750 (11th Cir.1983), the Eleventh Circuit Court of Appeals held that, although the debtor could not assert a homestead exemption against a particular judicial lien creditor under Florida law, he could have exempted the homestead property if such property had not been transferred and the trustee had avoided the lien, and thus he had standing under § 522(h) to use the trustee's powers to avoid the lien himself. *Id.* at 754. The court looked at the literal language of § 522(h), which states that "the debtor may avoid a transfer of property of the debtor ... to the

extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer ..." and concluded that the debtor had standing to use this provision since, if the trustee had avoided the transfer, the creditor would have no judgment lien and therefore no ground for claiming that the homestead exemption was not effective against its claim. *Id.* The Court of Appeals noted that the avoidance of such a transfer may have the effect of giving the debtor a broader exemption than state law would provide, but concluded that its holding was mandated by the clear language of the statute and furthered the policy underlying the trustee's preference avoidance powers. *Id. See also In re Williams*, 124 B.R. 311 (Bankr.C.D.Cal.1991); *In re Willis*, 48 B.R. 295 (S.D.Tex.1985); *In re Smith*, 45 B.R. 100, 106 (Bankr.E.D.Va. 1984);

This Court finds that the debtors in this matter likewise have standing to utilize § 522(h) to avoid the tax sale transfer since the tax sale purchaser would have no tax deed if the trustee avoided the transfer and therefore would have no ground for claiming that the homestead exemption was not effective against her claim.[2] The supremacy and uniform application of the federal bankruptcy laws requires that avoidance be allowed even when it conflicts with state-created exemption rules.

Although the Court was addressing a different subsection of § 522, the recent decision of the Supreme Court in *Owen v. Owen*, —— U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), further supports the conclusion that the avoidance powers granted to debtors in § 522 may be used to avoid liens on property which would have been exempt but for the lien itself. The issue in *Owen* was whether a debtor may avoid the fixing of a judicial lien which

---

**2.** As discussed *infra*, the transfer to be avoided is the tax deed transfer. Under Illinois law, once the tax deed is issued, the lien rights of the tax sale purchaser are merged into the deed and ownership rights so that an avoidance of the deed inherently voids the lien rights also and there would be no "sale for the non-payment of taxes" left outstanding which could render the

homestead exemption ineffective. The transferee of the avoided transfer may be entitled to a lien under § 548(c) but this lien would not constitute a sale for non-payment of taxes within the meaning of the ¶ 12–903 limitation on the exemption. For further discussion of these issues, see *infra* pp. 1008–11.

attached to his homestead property to the extent it impaired his homestead exemption even though Florida law opted out of the federal exemptions and provided that this homestead was not exempt from such a judicial lien at the time the lien attached.[3] The Supreme Court reasoned that the literal language of § 522(b) required the Court to "ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then [to allow the debtor to] avoid and recover the lien...." *Id.* at 1836. Although Florida law clearly precluded the assertion of a homestead exemption against the judgment lien creditor in that case, the Court concluded that the Bankruptcy Code contained a competing policy which allowed debtors to avoid certain liens even though the state attempted to prevent such a result by narrowly defining its exemptions. *Id.* The creditor argued that it is inconsistent with the opt out policy allowing state's to define their own exemptions to refuse to take such exemptions with all their built-in limitations. The Court stated that this argument is plainly not true and held that it is not inconsistent with the opt out right to have an avoidance policy disfavoring certain types of liens upon exemptions, whether federal or state created.

The same reasoning is applicable to the § 522(h) avoidance provisions. When the Bankruptcy Code provides the debtor with an avoidance power, state law cannot negate that power by opting out of the federal exemptions and narrowly defining the debtors' state-created exemptions. Furthermore, the Court's interpretation of § 522(f) requiring the exemption to be viewed as if no transfer occurred is even more applicable to § 522(h) which clearly incorporates subsection (g) directing the court to view the exemption as "if such property had not been transferred." Allowing the debtor to use the avoidance power will also further the basic policy of preventing fraudulent transfers. Although the property recovered will accrue solely to the benefit of the debtor to the extent of his exemption, allowing avoidance discourages creditors from attempting fraudulent or preferential transfers regardless of the ultimate benefit to the bankruptcy estate. Allowing such avoidance does not expand the debtor's bankruptcy remedies nor does it enlarge the scope of the avoidance powers since § 522 still requires the debtor to establish that the transfer is properly set aside under one of the basic avoidance sections. *In re Willis*, 48 B.R. 295 (S.D.Tex. 1985). The Court finds therefore that the debtors have standing under § 522(h) to seek to avoid the tax deed transfer to the extent of the homestead exemption to which they would have been entitled under Illinois law if the tax sale transfer had not occurred.

The debtors, however, apparently seek to set aside the entire transfer using the trustee's avoidance powers. Although Counts I, II and III of the amended complaint conclude that the debtors are entitled to avoid the transfer to the extent of their exemptions pursuant to § 522(h), the prayer for relief set forth at the end of the amended complaint asks this Court to determine (a) the extent to which the mortgage interests of the remaining defendants survived the transfer, or are revived by the avoidance thereof, (b) to order the defendant tax deed transferee to convey the property to the debtors, subject to such liens and mortgages in favor of the defendants as the Court determines proper, or (c) in the alternative, order that the property be sold with the proceeds distributed first to the debtors in the amount of their homestead exemption with the remainder, if any, to go to those parties the Court finds are entitled thereto, and the surplus if any to go to the debtors.

To the extent this language can be construed as seeking to fully utilize the trustee's avoidance powers and set aside the transfer in its entirety, the Court finds that the debtors are not entitled to the relief

**3.** Section 522(f) states in relevant part that: "[n]otwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is a (1) a judicial lien...."

sought. Although this Court and others have previously held that a Chapter 13 debtor has standing to assert the trustee's avoidance powers in their entirety, these cases are distinguishable from the instant Chapter 7 proceeding. *See, e.g., In re Einoder,* 55 B.R. 319 (Bankr.N.D.Ill.1985); *In re Robinson,* 80 B.R. 455 (Bankr.N.D.Ill. 1987).

The Chapter 13 debtors in *Einoder* sought to avoid a citation lien held by the mortgagee bank on the grounds that it constituted a preferential transfer which could have been avoided by the trustee under § 547. Although the complaint sought avoidance only to the extent of the debtor's homestead exemption, the court concluded that it was necessary to construe the complaint as raising the issue of whether the debtors could assert the trustee's full avoidance powers under § 547. *Id.* at 322. The court concluded that the Chapter 13 debtors were the most appropriate party to seek avoidance since the realities of bankruptcy practice were such that the Chapter 13 trustee would have no time, no incentive, and is in no position to litigate avoidance actions. The court reasoned that the trustee's inability to pursue these matters should not result in a windfall to the transferee creditor and held that the debtors were entitled to fully exercise the § 547 avoidance rights. *Id.* The reasoning of *Einoder* was adopted by this Court in a later decision, *In re Robinson,* 80 B.R. 455 (Bankr.N.D.Ill.1987), where the debtors sought to fully set aside a mortgage foreclosure sale under § 548 as a fraudulent transfer for less than reasonably equivalent value.

The reasoning of *Einoder* and *Robinson,* however, cannot be applied in a Chapter 7 proceeding. The responsibilities of a trustee and the realities of practice in a Chapter 7 case are clearly distinguishable from those in a Chapter 13 matter. In *Einoder,* the court reasoned that the function of the Chapter 13 trustee is to act as a disbursing agent for the debtor. In a Chapter 7 case, however, the primary duty of the trustee is to maximize the estate available for distribution to creditors. The trustee's role is not merely to act as an administrator, over-

seeing disbursements, as in a Chapter 13 matter. Rather, the Chapter 7 trustee routinely undertakes avoidance litigation and is aware of the duty to devote legal resources and time to such actions. The reality of such practice is that the trustee is functioning as the representative of the estate and is in the best position to bring these types of actions. The Chapter 7 trustee is the only person acting on behalf of the unsecured creditors. There is no justifiable reason for extending the full avoidance powers of the trustee to the debtor in such circumstances. In a case where the trustee has no incentive to bring an avoidance action because it will produce no benefit to the estate, the debtor may do so under § 522(h) only to the extent of his or her exemptions. This operates to preserve those benefits intended for debtor while the role of the Chapter 7 trustee ensures such avoidance protection for creditors in general when such benefit would accrue to the estate. The Court finds that, to the extent the amended complaint seeks to assert the trustee's avoidance powers in excess of the homestead exemption, the complaint fails to state a cause of action upon which relief can be granted and that portion of the complaint shall be dismissed.

## II. COUNT I: WHETHER THE TRANSFER CONSTITUTES A FRAUDULENT CONVEYANCE MADE FOR LESS THAN REASONABLY EQUIVALENT VALUE WHICH MAY BE AVOIDED UNDER § 548(a)(2)(A) & (B)(i)?

Section 522(h) provides that the debtors may avoid a transfer to the extent it could have been avoided by the trustee under § 544, 545, 547, 548, 549 or 724(a) or recovered by the trustee under § 553. In Count I, the debtors seek to avoid the transfer of their property by tax deed issued to the tax sale purchaser on the grounds that such transfer was a fraudulent conveyance under § 548(a)(2) made for less than reasonably equivalent value. In order to determine whether Count I states a cause of action under the § 548 fraudulent transfer provisions, it is necessary to briefly review

the Illinois tax sale provisions and the sequence of events leading up to the tax deed transfer and bankruptcy filing.

## A. *Illinois Revenue Act of 1939—Local Taxation of Real Estate*

The local taxation of real property in Illinois is governed by the Illinois Revenue Act of 1939, Ill.Rev.Stat. ch. 120, ¶ 482 *et seq.* (1989) (hereinafter "Revenue Act"). Basically, the Revenue Act provides that all non-exempt real property in Illinois shall be taxed for the support of local government. The Revenue Act contains detailed rules for exemptions, assessments, collection and enforcement of the revenue-raising provisions. The policies underlying this detailed scheme of taxation include (a) encouraging timely and complete payment of taxes, (b) efficient and uniform administration of the tax collection and enforcement system, (c) consistency and certainty throughout the tax system, (d) encouraging tax purchasers to participate in the tax enforcement process, (e) protecting the debtor's right of redemption and the due process rights of interested parties, and (f) ensuring the incontestability and marketability of title upon issuance of a tax deed. *Chicago v. City Realty Exchange, Inc.,* 127 Ill.App.2d 185, 262 N.E.2d 230 (1st Dist.1970).

To enforce the tax collection provisions, the Revenue Act grants a first priority lien to local government in the amount of the assessed taxes. Ill.Rev.Stat. ch. 120, ¶ 697 (1989).[4] Under this provision, the "tax lien" of the local government attaches on the first day of the taxable year and is granted first priority position from that time forward, even against pre-existing liens. *See also Chicago v. City Realty Exchange,* 127 Ill.App.2d 185, 262 N.E.2d 230 (1st Dist.1970); *Tubbs v. Dunlop,* 325 Ill.App. 53, 59 N.E.2d 514 (1st Dist.1945). Once the tax lien has attached, it remains in effect until the tax is paid (1) by the owner or an interested party or (2) through the sale of the property to a third party tax purchaser for the amount of the delinquent taxes. Timely payment of real property taxes by the owner or an interested party fully satisfies and thus extinguishes the local government's tax lien. Ill.Rev.Stat. ch. 120, ¶ 697 (1989). In the event the tax is not timely paid, however, the enforcement provisions of the Revenue Act provide that the property may be sold to a third party tax purchaser to ensure payment of the delinquent taxes.

Although Paragraph 697 provides that the tax lien remains in effect until the taxes are paid or the real property is sold pursuant to the Revenue Act, the "tax purchaser" does not actually purchase the real property at the tax sale. Rather, a "tax sale" will be held through which the tax purchaser may obtain a Certificate of Purchase, giving him a lien which may be enforced against the real property. *City Realty Exchange,* 127 Ill.App.2d 185, 262 N.E.2d 230 (1st Dist.1970). Thus, one method of collecting delinquent taxes and satisfying the local government tax lien is for the government to conduct a tax sale which effectively creates a lien in favor of the tax purchaser in exchange for payment of the delinquent tax.

The Revenue Act also provides that the owner of the real property on January 1 in any year is personally liable for the taxes of that year. Ill.Rev.Stat. ch. 120, ¶ 508(a) (1989). Local government may seek to enforce such personal liability through a civil action for a money judgment, which in turn may become a judicial lien on all real estate owned by the judgment debtor and which can then be enforced by execution, levy and sale. *Id.* at ¶ 756. In addition to this procedure, Paragraph 699 provides that a distraint action will also lie against personal property in order to satisfy unpaid real property taxes. Local government is free to choose from these enforcement provi-

---

**4.** Paragraph 697 provides that "[t]he taxes upon real property together with all penalties, interest and costs, that may accrue thereon, shall be a prior and first lien on such real property, superior to all other liens and encumbrances, from and including the first day of January in the year in which the taxes are levied until the same are paid or until the real property is sold pursuant to this Act...."

sions and proceed under either the personal liability remedies or the tax sale process.

The tax sale process consists of several events culminating in the issuance of a tax judgment and order of sale. *See* Ill.Rev. Stat. ch. 120, ¶¶ 706, 711, 713 and 716 (1989). Once a judgment and order of sale have been issued, a tax sale will be scheduled. There are five basic types of tax sales: annual tax sale, forfeiture tax sale, scavenger sale, tax foreclosure sale and the special tax sale. Although they vary in specific process and application, each tax sale procedure is designed to provide tax revenue through payment of the delinquent tax by the tax purchaser and to restore tax delinquent property to tax paying status either through a redemption by the owner or through the issuance of a tax deed to the tax purchaser. The tax sale at issue in this matter was an annual tax sale and all further discussion will focus on this procedure.

At the annual tax sale the property is sold to the tax purchaser in exchange for payment forthwith of all delinquent taxes relating to the property and other related costs. *Id.* at ¶ 728. The bids submitted at the tax sale are in no way based upon value of the property. Rather, the bid consists of the delinquent taxes plus some rate of penalty per six-month period to be assessed in the event a redemption is made by the owner or an interested party. The winning bidder is the person who submits the lowest penalty rate bid subject to statutory minimum and maximum amounts. Ill.Rev. Stat. ch. 120, ¶ 726 (1989). The benefit to the owner is apparent since the cost of redemption will be the tax amount plus penalty at the lowest rate bid.

Upon completion of the tax sale and payment, the tax purchaser is issued a Certificate of Purchase. Issuance of the Certificate of Purchase operates to satisfy the taxes due and extinguish the owner's personal liability for the taxes. The Certificate of Purchase has been construed by Illinois courts as a species of personal property which is readily transferable by endorsement and which evidences a valid lien against the property. *City Realty Ex-change,* 127 Ill.App.2d 185, 262 N.E.2d 230 (1st Dist.1970). The Certificate of Purchase, however, does not operate to transfer any title, legal or equitable, to the tax purchaser. *Illinois Railway Museum v. Siegel,* 132 Ill.App.2d 77, 266 N.E.2d 724 (2d Dist.1971). The Certificate embodies certain rights, including the right to proceed to tax deed and obtain legal title if no valid redemption is made, but it does not transfer such title under Illinois law until the redemption period has expired. The lien represented by the Certificate of Purchase has been held to be entitled to a first priority position over a pre-existing statutory demolition lien which was by definition subordinate to a "lien for taxes." *City Realty Exchange,* 127 Ill.App.2d 185, 262 N.E.2d 230 (1st Dist.1970).

Once a Certificate of Purchase has been issued it can be satisfied or extinguished through (1) a redemption by the owner or an interested party, (2) the issuance of a valid tax deed to the tax purchaser, or (3) expiration of the tax deed application period with no valid tax deed issued. The Revenue Act also provides that a Certificate of Purchase may be cancelled and set aside in the event of a sale-in-error. A sale-in-error may be found on the basis of certain pre-sale events, including (1) the land should have been exempt from taxation, (2) the taxes were previously paid, (3) the description of the property was too vague and uncertain, or (4) the owner previously filed a bankruptcy petition so that the sale was prohibited by the automatic stay. In the event of a sale-in-error, the Certificate of Purchase must be surrendered by the tax purchaser and will be cancelled in exchange for a full refund. Ill.Rev.Stat. ch. 120, ¶ 741 (1989). *See also Richard v. Chicago,* 80 B.R. 451 (N.D.Ill. 1987) and *In re Garcia,* 109 B.R. 335 (N.D.Ill.1989) (holding that a tax sale conducted after filing of petition in bankruptcy is void). In addition, the Revenue Act allows a tax purchaser to elect to have the tax sale declared a sale-in-error where the owner files a petition in bankruptcy after the tax sale and before entry of an order for the issuance of a tax deed. Ill.Rev. Stat. ch. 120, ¶ 741 (1989). Under this pro-

vision, the tax purchaser can avoid bankruptcy complications and obtain a full refund for the taxes paid.

Following the issuance of the Certificate of Purchase, the owner and certain interested parties are given an opportunity to redeem the tax sale through payment of the taxes plus penalties to the tax purchaser. Section 8, Article IX, of the Illinois Constitution provides that for repayment of taxes for a period of not less than two years following the tax sale. Since the consequence of a failure to redeem is the issuance of a tax deed, resulting in the owner's loss of the property and the ouster of other interested parties, the right of redemption must be strictly adhered to. Paragraph 734 of the Revenue Act implements the constitutional right of redemption. Under this paragraph, the length of the redemption period may be increased based on the type of tax sale and the type of property involved, Ill.Rev.Stat. ch. 120, ¶ 727 (1989), and it may be extended for a limited period by the tax sale purchaser in certain situations. To be valid, redemption must be made on or before the last day of the redemption period by the property owner or an interested party. Attempts to redeem after the expiration of the redemption period are a nullity and have no effect, absent fraud or mistake by the tax purchaser or public official. *In re Application of County Collector*, 99 Ill.App.2d 143, 241 N.E.2d 216 (3d Dist.1968).

In the event a tax sale is not redeemed within the statutory period, the tax sale purchaser may petition the court for an order directing the clerk to issue a tax deed. Ill.Rev.Stat. ch. 120, ¶ 747 (1989). To obtain a tax deed, the tax purchaser must carefully comply with the statutory provisions. Paragraph 747 provides that, at any time within five months prior to the expiration of the redemption period, the tax purchaser may file a petition for tax deed with the circuit court. Notice of the filing must be given pursuant to ¶ 744, which provides that a tax deed petitioner shall not be entitled to a tax deed unless, not more than five nor less than three months prior to the expiration date, two sets of notices are served on the necessary parties. The

petition for issuance of the tax deed must allege and the tax petitioner must ultimately prove that the redemption period has expired, no redemption has been made, all taxes and special assessments which became due and payable subsequent to the tax sale have been paid, all forfeitures and tax sales subsequent to the tax sale to this tax deed petitioner have been redeemed, proper notices have been served, and the petitioner has complied with all other provisions of law relating to the issuance of a tax deed. *Id.* at ¶ 747.

The court must then hold a hearing as to whether the tax deed petitioner has satisfactorily proven the necessary elements and is therefore entitled to a tax deed. Upon a determination that a tax deed is properly issued, the court will enter an order directing the clerk to issue a tax deed to the petitioner upon production of the Certificate of Purchase and a certified copy of the order.

Following the issuance of the tax deed, the tax deed grantee must record the deed within one year of the expiration of the redemption period or the tax deed will expire and the grantee will hold no further interest in the property. The tax deed does not vest merchantable title in the grantee until it is properly placed on the record within the one-year statutory period. In the event the tax sale purchaser fails to receive and record a valid tax deed, the lien represented by the Certificate of Purchase will expire, becoming absolutely null and void with no right of reimbursement. *Id.* at ¶ 752. Once recorded, the tax deed will pass merchantable title free and clear of all previous title and claims of every kind and character. *Bloomington v. John Allan Co.*, 18 Ill.App.3d 569, 310 N.E.2d 437 (4th Dist.1974). The Revenue Act provides that its tax deed provisions are to be liberally construed to ensure marketable title and encourage tax sale purchasers to participate in the process, thereby returning property to tax-paying status. *Id.* at 757; *Cherin v. R & C Co.*, 11 Ill.2d 447, 143 N.E.2d 235 (1957).

In the instant case, the delinquent taxes at issue were for the tax year 1984; the tax

lien of the county attached on January 1, 1984; the taxes were not timely paid; the delinquent taxes were sold at the annual tax sale on January 14, 1986, and a Certificate of Purchase creating a lien on the property was issued to the tax sale purchaser; the redemption period expired on August 10, 1988; an order for the issuance of a tax deed was entered on August 30, 1988, and the defendant tax deed grantee paid the remaining delinquent amounts for a total payment of approximately $4645.11; the tax deed was issued on September 8, 1988 and was thereafter timely recorded; the debtors were evicted from the property on April 15, 1989, and the debtors filed their Chapter 7 petition in bankruptcy on August 10, 1989.

### B. *Section 548 Fraudulent Transfer Provisions*

■ Section 548 of the Bankruptcy Code provides that the trustee may avoid any transfer of an interest of the debtor in property that was made on or within one year before the filing of the petition, if the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for such transfer and the debtor was insolvent or became insolvent as a result of such transfer. Under this provision, the trustee (the debtors in this case) must establish the following elements: (1) a transfer (2) of property of the debtor (3) made within one year prior to the filing of the petition (4) for less than reasonably equivalent value (5) at a time when the debtor was insolvent. The Court finds that the debtors have adequately stated a cause of action alleging each of these elements and thus the defendant's motion to dismiss must be denied.

### 1. *A transfer of property of the debtor within one year of the filing of the bankruptcy petition.*

The debtors seek to avoid the issuance of the tax deed transferring legal title to their residence to the tax sale purchaser. It is their position that (1) the transfer occurred upon the issuance of the tax deed on September 9, 1988, or alternatively upon the expiration of the redemption period on Au-

gust 10, 1988; (2) the bankruptcy petition was filed on August 10, 1989, within one year of the transfer; and (3) the property constituted property of the debtors immediately prior to the transfer. The defendant tax sale purchaser, however, argues that the transfer to be avoided occurred when the judgment of sale was entered against the property in favor of the local government and that the subsequent tax sale and tax deed constitute good faith transfers flowing from the original transfer which are protected under § 550(b). This argument fails to recognize that under the Illinois tax sale provisions there are a series of transfers which may occur and that the tax sale purchaser receives certain ownership-type rights which are separate and distinct from the tax lien rights previously held by the local government.

Section 101(54) defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." Under this broad definition, there were three distinct transfers during the tax sale process which resulted in a disposition of the debtors' interests in the property. The first transfer occurred when the tax lien attached to the property and the debtors' interest became subject to such lien. At this point, the rights of the debtors regarding their real property were involuntarily, albeit conditionally altered. Just as the grant of a mortgage lien or a security interest would constitute a transfer, the creation of a statutory lien transfers an interest in property.

Subsequent to the attachment of the tax lien, a second transfer occurred when the property was sold at the annual tax sale. The tax lien was extinguished along with the personal liability of the debtors for the delinquent taxes and a new type of lien was transferred to the tax sale purchaser as represented by the Certificate of Purchase. Again, the debtor's rights with respect to the real property were involuntarily, albeit conditionally altered. The defen-

dant tax sale purchaser argues that the transfer occurred at the time the judgment for tax sale was entered and that the tax sale purchaser merely became a mediate transferee of the original transferee who took for value in good faith without knowledge of the avoidable transaction and thus the property cannot be recovered from the tax sale purchaser under § 550 even if the transfer is properly avoided. Although the Court construes the question of recoverability under § 550 as a distinct and separate issue, to the extent this argument characterizes the tax sale transfer as merely an extension of the prior tax lien transfer, the Court rejects this characterization of the transfer.

The tax sale transfer brought an uninterested third party into the proceedings, and fundamentally altered the rights and interests of all parties concerned. It is not a simple assignment from one transferee to another. The tax lien of the county was extinguished in exchange for payment of the taxes. Likewise, the personal liability of the debtors for the delinquent taxes was extinguished. In addition, the tax sale purchaser received a new lien represented by the Certificate of Purchase which carried with it an entirely new set of rights in favor of the tax sale purchaser. Under the Certificate of Purchase, the tax sale purchaser has, among other rights,[5] the option to proceed to tax deed in the event no redemption was made. In contrast, the first priority government lien represents only the right to conduct a tax sale or seek enforcement against the property owner's personalty. Even though case law has treated the certificate of purchase lien as a tax lien for purposes of certain priority disputes between the certificate holder and third parties, the governmental tax lien and the certificate of purchase lien rights are not the same. *See, e.g., City Realty Exchange,* 127 Ill.App.2d 185, 262 N.E.2d 230 (1st Dist.1970). The statutory rights embodied in the Certificate of Purchase are greater than and materially different from those enforcement rights held by the county under its tax lien.

Similarly, the rights of the debtors regarding their real property were fundamentally altered by the tax sale. Although the debtors retained title to the real estate as part of their right to redeem from the tax sale, upon expiration of the redemption period the tax sale purchaser could move to divest them of title by proceeding to obtain a tax deed. Clearly these rights and conditions arose separately from the prior tax lien transfer and constituted a new transfer within the meaning of § 101(54) and § 548.

The tax deed itself represents yet another transfer which occurred within one year of the filing of the petition. Upon expiration of the debtors' redemption period, the tax sale purchaser became entitled to obtain a tax deed and acquire legal title to the property. Until such exercise, the Certificate of Purchase does not transfer any ownership interest in the property and legal title remains with the debtors. *Illinois Railway Museum v. Siegel,* 132 Ill.App.2d 77, 266 N.E.2d 724 (2d Dist.1971); *Chicago v. City Realty Exchange,* 127 Ill.App.2d 185, 262 N.E.2d 230 (1st Dist.1970). The expiration of the redemption period and the resulting right to proceed to tax deed, therefore, fundamentally altered the rights of the parties. The debtors were involuntarily divested of their remaining ownership rights at that time, resulting in a transfer within the meaning of § 101(54) and § 548.

Section 548(d) provides that for purposes of § 548 "a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the trans-

---

5. These rights include: the right to assign or sell for value the certificate of purchase; the right to petition the circuit court to appoint a receiver for the property; the right to be served with notice of governmental actions affecting title to the property; the right to receive a refund if the tax sale is declared a sale in error; the right to receive the redemption money if a redemption is made during the redemption period; and the right to ultimately proceed to tax deed if no redemption is made. Ill.Rev.Stat. ch. 120, ¶ 734, ¶ 734a, ¶ 741, ¶ 747 (1989).

feree...." Under this provision, the transfer would occur when it was perfected under Illinois law so that a bona fide purchaser from the debtor could not acquire a superior interest. Illinois case law provides that the tax sale purchaser's lien is superior to and has priority over all other claims from the date of the issuance of the Certificate of Purchase until the expiration of the redemption period. *City Realty*, 127 Ill.App.2d 185, 262 N.E.2d 230 (1st Dist. 1970). Thus, the tax sale purchaser's lien would be perfected and deemed transferred at the time of its creation. Absent a redemption, no third party could acquire a greater lien interest or take title free from this lien after such time.

Upon expiration of the redemption period, however, the lien rights of the tax sale purchaser are modified under the Illinois Revenue Act. The tax sale purchaser must file an application for tax deed not more than five months and not less than three months before the expiration of the redemption period. Ill.Rev.Stat. ch. 120, ¶ 747 (1989). If such an application is not properly filed, the lien represented by the Certificate of Purchase becomes invalid and is no longer enforceable by the tax sale purchaser. Thus, upon expiration of the redemption period, depending on the sequence of events, the lien may no longer be perfected.

Alternatively, if an application for tax deed is timely filed, equitable title to the property passes to the tax sale purchaser subject to his obligation to prove-up his case and receive legal title via tax deed and to properly record that deed within one year of the expiration of the redemption period. Unless the tax deed is recorded, it will become null and void by operation of law. Under this sequence of events, the prior lien is extinguished by and merges into the tax deed. Upon perfection, the effective date of the deed will relate back to the date on which the redemption period expired. The transfer would not be perfected and would not be deemed to have occurred until these procedures were completed.

 The possibility of a gap in perfection where the tax sale purchaser fails to properly apply for a tax deed, or where the tax deed is not perfected by recording, supports the conclusion that the process consists of more than one transfer, and that a properly perfected tax deed does not relate back to the tax sale and the creation of the tax purchaser's lien, but rather to the date of expiration of the redemption period. Thus, within the meaning of § 548(d), the transfer to be avoided here occurred upon the expiration of the redemption period.

This is also consistent with the fact that until the redemption period expired the debtors continued to hold legal and equitable title to the property, making it clearly property of the debtor at the time of the transfer. The rights of the debtors and of the tax sale purchaser in the property before and after the expiration of the redemption period were markedly different. Prior to that time, the tax sale purchaser held only certain lien rights which were subject to divestment through a redemption or failure to properly petition for a tax deed, whereas after that time the tax sale purchaser held equitable title subject only to the formalities of perfection. This fundamental shift constitutes a transfer of the property of the debtors to the tax sale purchaser which occurred within one year of the filing of the petition.

The Court is aware of a series of unpublished district court opinions in this district, as well as a decision by the bankruptcy court in the Northern District of Indiana applying Illinois law and a brief order previously entered by this Court, which hold that the automatic stay imposed by § 362 does not operate to bar the issuance of a tax deed during the pendency of a bankruptcy proceeding. *See, e.g., In re Richardson*, No. 83 C 2654, slip opinion dated January 6, 1984 (McMillen, J.); *In re Guice*, No. 85 C 1382, slip opinion dated Sept. 27, 1985 (Norgle, J.); *In re Thomas*, No. 84 C 4242, slip opinion dated December 10, 1984 (Bua, J.); *Lapat v. Shek*, No. 82 C 2458, slip opinion dated December 15, 1983 (Marovitz, J.). *See also In re Thompson*, No. 89 B 17031, Order dated November 15,

1989, (Katz, J.); *In re Curry*, No. 87 A 6004, slip opinion dated December 14, 1987 (Bankr.N.D.Ind.) (Lindquist, J.). To the extent these decisions seem to indicate that the transfer of rights occurs at the time of the tax sale and that the subsequent tax deed proceeding is merely a change in form rather than substance, the Court declines to follow this reasoning.

The issue presented in those cases was whether the filing of a bankruptcy petition would operate to toll or stay the running of the redemption period under § 362 or § 108 and, if the redemption period were not so tolled, whether the application for and issuance of a tax deed would violate the automatic stay. Those courts uniformly held that the redemption period was not tolled, that upon the filing of the bankruptcy petition the right of redemption became property of the estate, and that the tax deed proceeding was not subject to the automatic stay since it was not "a proceeding to collect, harass or foreclose, but rather to provide for the tax certificate holder to obtain clear title to the property in question." That holding is binding upon and was adopted by this Court in its ruling in *In re Thompson*, No. 89 B 17031, Order dated November 15, 1989 (holding that the application for a tax deed upon expiration of the redemption period did not violate the automatic stay). These courts did not, however, address the issue of when a transfer occurred for avoidance purposes.

The decisions cited above focused on the interrelationship between: (a) § 108, limiting the time available to the debtor or trustee to cure a default; (b) § 541, defining property of the estate; and (c) the § 362 automatic stay. Those courts held that the right to cure was not extended, the property was no longer property of the estate, and thus the automatic stay did not apply. The focus of § 548, however, is to establish a procedure for recovering and bringing back into the estate property which at the time of the filing of the petition is not property of the estate and is not subject to the automatic stay. *Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir.), *cert. denied Belisle v. Azivino*, 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989) (con-

trasting the function of the § 541 property of the estate definition with the role of the trustee's avoidance powers). This right of recovery is extended to transfers which occurred within one year of the filing of the petition. The decisions noted above did not involve this transfer issue and any statements therein as to when the transfer occurred for avoidance purposes constitute only dicta. Furthermore, these decisions misconstrue Illinois law in indicating that the only controlling transfer in the tax deed process is the "tax sale" and that the subsequent redemption period and tax deed proceeding are mere ministerial details. The right of redemption is expressly protected by the Illinois Constitution, Article IX, § 8, and the expiration thereof fundamentally alters the debtor's interest in the property. Thus, to the extent those cases suggest that the transfer at issue occurred outside the one year period, the Court finds the reasoning therein to be inapplicable to the instant proceeding. Those decisions were not addressing the issue of when the transfer was deemed to occur for avoidance purposes and thus did not reach the issues before this Court. The Court finds that the debtors' amended complaint properly alleges that the transfer of the debtors' interest in the property occurred within one year of the filing of the bankruptcy petition.

### 2. A transfer for less than reasonably equivalent value made while the debtors were insolvent.

■ To avoid the tax deed transfer under § 548, the debtor must also establish that they received less than reasonably equivalent value for the transfer. Section 548(d)(2)(A) defines value as "property or satisfaction or securing of a present or antecedent debt of the debtor, but [not an] unperformed promise to furnish support to the debtor or to a relative of the debtor." Under this definition, value given to a third party which also bestows an economic benefit on the debtor would constitute value given to the debtor. *Rubin v. Manufacturers Hanover Trust*, 661 F.2d 979 (2d Cir.1981); *Klein v. Tabatchnick*, 610 F.2d 1043 (2d Cir.1979); *In re Corporate Jet*

*Aviation,* 57 B.R. 195 (Bankr.N.D.Ga. 1986), *aff'd* 82 B.R. 619 (N.D.Ga.1987). The debtors in this proceeding received value for the transfer through McClandon's payment of the delinquent taxes in the amount of $4654.11 which extinguished their personal liability for these amounts. Ill.Rev.Stat. ch. 120, ¶ 508a, ¶ 697 (1989).

Count I of the debtor's Amended Complaint alleges that the fair market value of the property at the time of the transfer was not less than $50,000, that the debtors held approximately $29,000 worth of equity in the property, that the only value received by the debtors in exchange for the transfer was the release of the tax purchaser's lien in the amount of $4,645.11, and that the property was transferred for less than 9.3% of fair market value and less than 16.1% of the debtor's equity interest, making it a transfer for less than reasonably equivalent value under § 548(a)(2)(A). Reviewing these allegations of fact in the light most favorable to the plaintiff, the Court finds that the debtors have properly stated a cause of action in Count I of the Amended Complaint.

■ The defendant tax sale purchaser argues, however, that a properly conducted tax sale is not subject to attack as a fraudulent transfer for less than reasonably equivalent value because (1) the Supreme Court has upheld the constitutionality of the tax sale statute and (2) allowing such attack would result in a cloud upon every tax sale and would impair the express goal of the Illinois legislature to ensure merchantability and incontestability of title obtained through the tax deed process. A similar argument was made in the context of a mortgage foreclosure sale under the Illinois Mortgage Foreclosure Act and directly rejected by the Seventh Circuit Court of Appeals in *In re Bundles,* 856 F.2d 815 (7th Cir.1988).

In *Bundles,* the Seventh Circuit joined those circuits adopting the reasoning of *Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980), and declined to follow *Lawyers Title Insurance Co. v. Madrid,* 21 B.R. 424 (Bankr. 9th Cir.1982), *aff'd on other grounds* 725 F.2d

1197 (9th Cir.), *cert. denied* 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984). The court held that, despite the potential negative effect on the foreclosure market, the language of § 548 required the court to review the specific facts of each case to determine whether the sale price received at a regularly conducted, non-collusive foreclosure sale constituted reasonably equivalent value. The court reasoned that applying an irrebuttable presumption of value in a foreclosure sale would create an exception to the avoidance powers inconsistent with the language of § 548. *Id.* at 823. Rather, the court should examine all the facts of each case, going beyond a simple comparison of the sale price to the fair market value, to determine whether reasonably equivalent value had been given. *Id.* at 824. *See also In re Robinson,* 80 B.R. 455 (Bankr.N.D.Ill.1987).

The same rationale is applicable here in the context of the tax sale and tax deed. The Court cannot find as a matter of law that tax deed transfers constitute an exception to § 548 and are immune from attack as a fraudulent transfer due to the negative impact upon the tax deed market. The Court finds therefore that the debtors have properly alleged that the transfer was made for less than reasonably equivalent value under § 548 and have stated the underlying facts and the value received.

The only remaining element is the issue of the debtors' insolvency at the time of transfer. The debtors allege in Count I of the Amended Complaint that (1) during the entire year prior to the filing of the bankruptcy petition, the sum of their debts exceeded the value of their non-exempt assets, or (2) the transfer resulted in the sum of their debts exceeding the value of the non-exempt assets. These allegations satisfy the definition of insolvency under § 101(32) and the language of § 548. The Court, therefore, finds that the debtors have properly alleged the insolvency element so as to state a cause of action under § 548.

The Court also notes and the debtors state in their complaint that, assuming the transfer is avoided under § 548, the tax

deed transferee would be entitled to a lien under § 548(c) to the extent of value given. Although there is some question as to the value attributable to the portion of the transfer to be avoided since avoidance is limited to the extent of the debtor's exemption, this determination is not before the Court at this stage and need not be resolved in connection with the defendant's motion to dismiss.[6]

### 3. Recovery of the Property Transferred Under § 522(i) and § 550.

■ Section 522(i) states that the debtor may recover the property pursuant to the standards set forth in § 550 to the extent the transfer is avoided under subsection (h) the same as if the trustee had avoided the transfer and may exempt the property so recovered. Thus, the prayer for relief set forth in the debtor's amended complaint seeks to recover the property or the value thereof by requesting that (1) the Court order the defendant to execute a deed conveying the property to the debtors, subject to such liens and mortgages in favor of the defendants in such amounts as the court has determined to the proper, or (2) the Court order that the property be sold, with the proceeds to be distributed first to debtors to the extent of their homestead exemption and the remainder, if any, to be distributed to those parties the Court finds are entitled thereto, and any surplus to be paid to the debtors. The defendant, however, argues that the debtors cannot recover from her because she is an immediate transferee of the initial transferee (the local government collecting the taxes) who took for value in good faith without knowledge of the transfer avoided and she is therefore protected by § 550(b). As previously discussed herein, this argument mischaracterizes the tax deed transfer to be avoided as a mere assignment of the taxing authority claims to the tax sale purchaser. The Court finds that the tax sale and tax deed transfer were not a replacement or

**6.** At this stage of the proceedings, the Court is not required to rule on the merits of Count I or to determine the final form of the relief to be awarded in the event of an avoidance. There are, however, certain unresolved issues relating to the final relief available which must ultimately be considered by the parties. The Court will not attempt to resolve these unripe issues at this time.

Assume arguendo that the plaintiff ultimately prevails and obtains an avoidance of the tax deed transfer under § 548 to the extent of the debtors' combined $15,000 homestead exemptions. What is the ultimate effect of such avoidance? Section 550 provides that the debtor may recover the property or the value thereof from the transferee, but this provision becomes more difficult to apply in the event of a partial avoidance and recovery involving a single unit of real property. Furthermore, § 548(c) provides that the transferee which took in good faith for value shall hold "a lien on or may retain any interest transferred" to the extent he gave value for the transfer avoided. Does this provision provide the transferee with an election of either a lien against the property or the retention of the property itself to the extent of value? The original text of § 548 did not contain this language and a review of the legislative history reveals that the text was amended to correct an unintentional omission and conform the Bankruptcy Code to the Uniform Fraudulent Conveyance Act. Original text enacted by P.L. 95–598, Nov. 6, 1978; Amended text enacted in P.L. 98–353, July 10, 1984. For legislative history, *see*

S.658–S.Rept. 96–305; H.Rept. 96–1195; S.863–S.Rept. 97–150; S.445–S.Rept. 98–65. The relevant provisions of UFCA seem to support the idea that the transferee may retain the property itself. UFCA § 9(2). Assuming this is correct, the Court is then faced with a conflict between the debtors' homestead rights and the transferee's right of retention. In the event the transferee promptly pays-off the homestead exemption, there will be no difficulty, but what if this is not possible? Is the debtor then entitled to occupy the premises even though only a portion of the transfer has been avoided? The recent decision by the Seventh Circuit Court of Appeals in *In re Szekely*, 936 F.2d 897 (7th Cir.1991), holding that the homestead exemption in Illinois entitles the debtor to possession of the premises rent free until he receives payment in full of the exemption amount from the trustee, suggests that the debtor may be entitled to such relief. Additionally, there remains the possibility that the parties may request some form of a judicial sale with the proceeds to be distributed by the Court.

Alternatively, would the tax sale purchaser have the right upon avoidance to utilize the Illinois tax sale provision allowing him to elect to cancel the Certificate of Purchase and receive a refund of his funds since a petition in bankruptcy has been filed? If so, what is the impact upon the taxing authority at that point? Would the taxing authority be a necessary party to this litigation if that is a viable alternative form of relief? These issues are not yet ripe for resolution but must be considered as the case progresses.

substitute for the prior tax lien since the rights transferred were of an entirely different nature. The initial transferee of the transfer to be avoided was the tax sale purchaser herself and thus § 550(b) is not applicable and the debtors may recover from her.

In sum, the Court finds that the debtors have adequately stated a cause of action under Count I of the Amended Complaint seeking to avoid the tax deed transfer. Defendant's Motion to Dismiss will therefore be Denied as to Count I.

III. COUNT II AND COUNT III: WHETHER THE TRANSFER IS AVOIDABLE BY THE DEBTORS UNDER § 544(b) AS A TRANSFER WHICH IS AVOIDABLE UNDER APPLICABLE LAW BY A CREDITOR HOLDING AN UNSECURED CLAIM?

A. *Count II*

 Count II of the Amended Complaint seeks to avoid the tax deed transfer under § 544(b) on the grounds that it could have been avoided by defendant Harvey under state law because Harvey, an interested party, did not receive notice of the tax deed proceedings. Section 544(b) provides that the trustee (in this case the debtor) may avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an allowed unsecured claim. The applicable law to be applied in this instance is state law. The defendant Harvey held the first mortgage on the property in the approximate amount of $21,000 which was duly recorded in August 1985 prior to the tax deed transfer. By virtue of this mortgage interest, defendant Harvey is deemed to be an interested party entitled to receive notice of the tax deed proceedings. Ill.Rev. Stat. ch. 120, ¶ 744 and 747 (1989). When these notice provisions and the other procedural requirements are complied with, the tax deed proceeding has been held to adequately protect the property rights and constitutional due process rights of the property owner and other interested parties. *See e.g., Rosewell v. Chicago Title &*

*Trust Co.*, 99 Ill.2d 407, 76 Ill.Dec. 831, 459 N.E.2d 966, *app. dis. Blum v. Rosewell*, 467 U.S. 1237, 104 S.Ct. 3503, 82 L.Ed.2d 813 (1984); *Cherin v. R. & C. Co.*, 11 Ill.2d 447, 143 N.E.2d 235 (1957); *Balthazar v. Mari, Ltd.*, 301 F.Supp. 103 (N.D.Ill.), *aff'd* 396 U.S. 114, 90 S.Ct. 397, 24 L.Ed.2d 307 (1969); *Catoor v. Blair*, 358 F.Supp. 815 (N.D.Ill.), *aff'd* 414 U.S. 990, 94 S.Ct. 345, 38 L.Ed.2d 231 (1973), *reh. den.* 414 U.S. 1172, 94 S.Ct. 934, 39 L.Ed.2d 121 (1974). In the event the procedural requirements are not fully satisfied, however, the tax deed issued may be subject to collateral attack under Illinois law in certain instances.

The Illinois Revenue Act provides that defenses to a tax sale or a tax deed proceeding which existed before the order for sale or for issuance of the deed cannot be raised after the entry of such order, with the exception of a defense that the property was exempt from taxation or that the taxes were previously paid in full. Ill.Rev. Stat. ch. 120, ¶ 751 (1989). Case law has added two more limited jurisdictional defenses which can be raised at any time in a collateral attack (1) based on the filing of a bankruptcy petition prior to the tax sale, *In re Young*, 14 B.R. 809 (N.D.Ill.1981), or (2) involving a petition to set aside a tax deed to state-owned property rasing issues of sovereign immunity. *People v. Georgeoff*, 32 Ill.2d 534, 207 N.E.2d 466 (1965). In all other situations, a collateral attack to set aside a tax deed can only be brought under ¶ 2–1401 of the Code of Civil Procedure subject to very stringent procedural requirements.

Paragraph 747 provides:

"tax deeds issued pursuant to this Section are incontestable except by appeal from the order of the court directing the county clerk to issue the tax deed. However, relief from such order may be had under Section 2–1401 of the Code of Civil Procedure in the same manner and to the same extent as may be had under that Section with respect to final orders and judgments in other proceedings. However, the grounds for relief shall be limited to a showing by clear and convincing

evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his assignee, that the taxes were paid prior to sale, or that the property was exempt from taxation. In cases regarding the sale of homestead property in counties with a population of more than 3,000,000 inhabitants, a tax deed may also be voided by the court upon petition, filed not more than three months after an order for tax deed was entered, if the court finds that the property was owner occupied on the expiration date of the period of redemption and the order for deed was effectuated pursuant to a negligent or willful error made by an employee of the county clerk or the county collector during the period of redemption from said sale that was reasonably relied upon to the detriment of any person having a redeemable interest."

This is the exclusive remedy for an interested party seeking to collaterally attack a tax deed under Illinois law. *Id.; Vulcan Materials Co. v. Bee Constr.*, 96 Ill.2d 159, 70 Ill.Dec. 465, 449 N.E.2d 812 (1983); *Freisinger v. Interstate Bond Co.*, 24 Ill.2d 37, 179 N.E.2d 608 (1962).

Paragraph 747 was amended in 1990 by the Illinois General Assembly to clearly state that collateral attack would only be allowed in the event of some actual fraud, when the taxes were paid prior to sale, when the property was exempt from taxation, or when an error was made by the county taxing authority which was reasonably relied upon by an interested party. Prior to this amendment, the Illinois Supreme Court had held that collateral attack could only be based upon allegations of fraud. *In re Application of County Treasurer of Cook County*, 92 Ill.2d 400, 65 Ill.Dec. 905, 442 N.E.2d 216 (1982). Subsequent cases, however, began to create certain equity-based exceptions to this rule. *See, e.g., In re Application of Rosewell*, 148 Ill.App.3d 297, 101 Ill.Dec. 466, 498 N.E.2d 790 (1st Dist.1986); *In re Application of County Treasurer*, 171 Ill.App.3d 644, 121 Ill.Dec. 545, 525 N.E.2d 852 (1st Dist.1987). To prevent further deviation from the requirement of fraud in a collateral proceeding, the statute was amended to clearly state that fraud would be the only acceptable basis for attack absent prior payment of the taxes, taxation of exempt property, or error by the taxing authority. Ill.Rev.Stat. ch. 120, ¶ 747 (1959).

Although there have been no cases under the amended text, the courts applying the prior judicially-created requirements generally held that a petition to set aside which alleges only a simple error in service or a lack of diligent inquiry in determining the parties to be noticed will be dismissed. The petitioner must demonstrate some specific fraudulent act or course of conduct, such as the deliberate failure to serve a known party in addition to intentional concealment of that information from the court. *See, e.g., In re Application of County Collector*, 179 Ill.App.3d 1067, 128 Ill.Dec. 961, 535 N.E.2d 472 (3d Dist.1988). A petition alleging the mere failure to serve a mortgagee of record with notice of the tax deed proceeding which contains no allegations of fraud will not be sufficient to set aside the tax deed. *Urban v. Lois, Inc.*, 29 Ill.2d 542, 194 N.E.2d 294 (1963). Failure to make a more thorough inquiry or search for interested parties, mistaking the nature of occupancy of the tax deed property, omitting a party, or serving the wrong party have all been held not to constitute fraud sufficient to set aside a tax deed proceeding on collateral attack.

After reviewing the applicable law, the Court finds that defendant Harvey would not be entitled to avoid the tax deed absent some allegation of specific fraudulent conduct by the tax deed transferee. Count II of the amended complaint fails to make any such allegations. On the basis of the facts stated therein, the Court cannot find that the transfer would be avoidable by any unsecured creditor under applicable law and thus the debtors have failed to state a cause of action under § 544(b). The Court finds therefore that Count II of the Amended Complaint fails to state a cause of action. Defendant's Motion to Dismiss will be granted as to Count II with leave to file an amended Count II.

**1016**

### B. *Count III*

Similar to the allegations contained in Count II, Count III of the Amended Complaint. asserts that the transfer may be avoided under § 544(b) on the grounds that the transfer could be avoided by Harvey under applicable constitutional law as an unconstitutional deprivation of Harvey's interest in the property. Count III alleges that "Illinois law authorizes the issuance of a tax deed in these circumstances without either actual notice, or notice reasonably calculated to advise a property owner of the proceedings. If the issuance of the tax deed to McClandon was permissible under Illinois law, even though no actual notice was required to be given to Harvey, this was an unconstitutional deprivation of Harvey's property interest, in violation of the Fourteenth Amendment to the United States Constitution. Therefore, Harvey has the right to avoid the issuance of the tax deed." This Count fails to state a cause of action.

The constitutionality of the Illinois Revenue Act notice provisions has been upheld by numerous reviewing courts. The tax deed proceeding has been held to adequately protect the property rights and constitutional due process rights of the property owner and other interested parties. *See e.g., Rosewell v. Chicago Title & Trust Co.,* 99 Ill.2d 407, 76 Ill.Dec. 831, 459 N.E.2d 966, *app. dis. Blum v. Rosewell,* 467 U.S. 1237, 104 S.Ct. 3503, 82 L.Ed.2d 813 (1984); *Cherin v. R. & C. Co.,* 11 Ill.2d 447, 143 N.E.2d 235 (1957); *Balthazar v. Mari, Ltd.,* 301 F.Supp. 103 (N.D.Ill.), *aff'd* 396 U.S. 114, 90 S.Ct. 397, 24 L.Ed.2d 307 (1969); *Catoor v. Blair,* 358 F.Supp. 815 (N.D.Ill.), *aff'd* 414 U.S. 990, 94 S.Ct. 345, 38 L.Ed.2d 231 (1973), *reh. den.* 414 U.S. 1172, 94 S.Ct. 934, 39 L.Ed.2d 121 (1974). Thus, the transfer could not be voided under applicable law on constitutional grounds and the debtors' have failed to state a cause of action under § 544(b). Defendant's Motion to Dismiss will be granted as to Count III.

### ORDER

IT IS HEREBY ORDERED THAT the Defendant McClandon's Motion to Dismiss the Amended Complaint for failure to state a cause of action is GRANTED as to Count II and Count III of the Amended Complaint and these Counts are hereby DISMISSED. IT IS FURTHER ORDERED THAT debtors are given leave to file an Amended Count II on or before *November 21, 1991.*

IT IS FURTHER ORDERED that the Defendant's Motion to Dismiss is DENIED as to Count I of the Amended Complaint.

IT IS FURTHER ORDERED THAT a status hearing be held in this matter on December 4, 1991, at 10:00 a.m. in Courtroom 613, 219 S. Dearborn, Chicago, Illinois, 60604.