**In re Lucille JACKSON, Debtor.**

**Bankruptcy No. 92 B 1591.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 16, 1994.

Marshall A. Levin, Chicago, IL, for debtor.

Burton A. Brown, Chicago, IL, for Midwest Real Estate Inv. Co.

Jack McCullough, Chapter 13 Trustee, Chicago, IL.

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the court on the motions of Lucille Jackson, the debtor, to enforce the automatic stay and for sanctions and the motions of Midwest Real Estate Investment Company Partnership to lift the automatic stay and objecting to a claim filed on its behalf by the Debtor.[1] For the reasons stated below, the court grants the Debtor's motion to enforce the automatic stay, denies the Debtor's motion for sanctions, denies Midwest's motion to lift the automatic stay, and continues Midwest's motion objecting to claim until a further date.

### FACTS [2]

On January 24, 1989, Midwest Real Estate Investment Company Partnership ("Midwest") purchased the property located at 7826 South Ingleside in Chicago, Illinois for the delinquent taxes and (presumably) received a Certificate of Purchase.[3] Pursuant

---

1. Although Midwest seeks to lift the automatic stay, it has already allegedly taken action in violation of the stay. Apparently, Midwest is actually seeking an annulment of the automatic stay to be applied retroactively in order to validate its previous actions in violation of the stay. See e.g., Sikes v. Global Marine, Inc., 881 F.2d 176, 179 (5th Cir.1989); In re Schwartz, 954 F.2d 569, 572–73 (9th Cir.1992); In re Albany Partners, Ltd., 749 F.2d 670, 675 (11th Cir.1984); In re Servico, Inc., 144 B.R. 933, 936 (Bankr. S.D.Fla.1992).

2. The facts set forth in this opinion seem to be stipulated by the parties by assumption. The parties seem to assume there is no factual dispute with respect to the instant matters and, in fact, seem to treat them as appropriate for summary judgment. No hearing has been held regarding these facts. Nevertheless, the Court ac-

cepts such statements as true for the purpose of this Opinion and is basing this ruling on such statements. In the event any party contests the factual record as stated herein, and that is not the subject of a judicial admission, compare In re Cobb, 56 B.R. 440 (Bankr.N.D.Ill.1985), such party may request that the Court set this matter for an evidentiary hearing which hearing will be held if there is a genuine issue of material fact. See e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

3. The parties have given the court very little background information about the facts and circumstances surrounding the tax sale. It is assumed for purposes of this motion that at some point, as a result of the Debtor's failure to pay Illinois real estate taxes on the property in ques-

to Illinois law, the Debtor had a right to recover the property by redeeming it by paying the taxes plus certain penalties and interest. *See* 35 ILCS 205/253(b)(2). The last day to redeem was January 24, 1992.[4] The Debtor did not attempt to extend the period of redemption or to pay off the taxes before January 24, 1992 nor has she done so anytime thereafter. On September 30, 1991, Midwest filed a petition for a tax deed with the County Clerk of Cook County. *See* 35 ILCS 205/266.

On January 24, 1992, the Debtor filed for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301, *et seq.* In her bankruptcy schedule filed with the court, the Debtor listed the property located at 7826 South Ingleside as an asset of the estate. On March 23, 1992, a hearing was held in the Circuit Court of Cook County on Midwest's petition for a tax deed and on April 8, 1992, Judge Eugene L. Wachowski issued a tax deed to Midwest (case number 91 CoTd 3661). *See* 35 ILCS 205/266. Midwest promptly recorded its deed in Cook County. The Debtor filed her emergency motion to enforce the automatic stay on April 15, 1993. On April 29, 1993, the Debtor filed a proof of claim on behalf of Midwest in the amount of $2,274. Midwest filed its motion to modify the stay on August 17, 1993. The Debtor then filed her reply to Midwest's motion to lift the automatic stay and also filed a motion for sanctions on August 18, 1993. Finally, on September 17, 1993, Midwest filed an objection to the claim the Debtor had filed on Midwest's behalf.

The Debtor claims that Midwest's April 8, 1992 tax deed is void because Midwest proceeded in state court in violation of the automatic stay imposed by 11 U.S.C. § 362(a) on creditor collection actions after the filing of a bankruptcy petition without first obtaining leave of the bankruptcy court. The Debtor further argues that because Midwest failed to obtain and record a valid tax deed within one year following the expiration of the period of redemption as required by 35 ILCS 205/271, Midwest's certificate and sale on which it is based is null and void. Consequently, the Debtor contends that she is the owner of the property in question. Alternatively, the Debtor argues that Midwest should not be allowed to lift the automatic stay because it is a secured creditor in this case and its interest in the Debtor's property is adequately protected by virtue of the Debtor's significant equity in the property.

Midwest, on the other hand, argues that all of the Debtor's rights in the property were extinguished by operation of Illinois law upon the expiration of the period of redemption and therefore seeks an order lifting the automatic stay to allow it to exercise its ownership interests in the property to evict the Debtor and obtain possession of the property. Further, Midwest denies that it is a creditor of the estate and objects to a filing of a claim by the Debtor on behalf of Midwest. Finally, Midwest contends that the Debtor's argument is barred by the doctrine of laches.

### *JURISDICTION AND PROCEDURE*

This court has jurisdiction over this matter under 28 U.S.C. § 1334(b) as a matter arising under § 362 of the Bankruptcy Code. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) as a motion to terminate, annul or modify the automatic stay. This proceeding is before the court pursuant to Local

---

tion, the Treasurer of Cook County was able to obtain a judgment and order of sale from the Circuit Court of Cook County. Evidently, the Treasurer then sold this judgment to Midwest at a public tax sale on January 24, 1989, with Midwest receiving a Certificate of Purchase. The details about the judgment and sale are not essential to this motion as both parties agree that the sale of back taxes occurred on January 24, 1989. For an excellent discussion of the Illinois tax sale process *see McKeever v. McClandon*, 132 B.R. 996, 1006–08 (Bankr.N.D.Ill.1991).

**4.** Both parties allege that the period of redemption expired on January 24, 1992. For purposes of the instant motions, the court accepts this expiration date. The court notes that under Illinois law, 35 ILCS 205/253(b)(2), the delinquent taxpayer is given two and one-half years in which to redeem. However, Midwest, as it is allowed to do under 35 ILCS 205/263, asserts that it has a corporate policy of extending the period of redemption by an additional six months, thus increasing the total period of redemption to three years. *See* Letter to The Honorable Robert E. Ginsberg from Burton Brown, attorney for Midwest, filed November 29, 1993.

Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to this court for hearing and determination.

## DISCUSSION

■ Bankruptcy Code § 108(b) provides:

(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may file, cure, or perform, as the case may be, before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and (2) 60 days after the order for relief.

11 U.S.C. § 108(b). The law in this Circuit is clear that "when a petition in bankruptcy is filed before the expiration of the applicable state redemption period, § 108(b) extends the redemption period for at least 60 days from the commencement of bankruptcy proceedings." *In re Tynan*, 773 F.2d 177, 179 (7th Cir.1985). In addition, the *Tynan* court also ruled that § 362 of the Bankruptcy Code, the automatic stay, does not toll the running of a state law redemption period. *Id.* at 179–80.

■ The resolution of the instant dispute is controlled by *Tynan*. Because the Debtor filed her petition for bankruptcy on the same day the statutory redemption period was to expire, i.e., before the state law redemption period expired, she benefitted from § 108(b)

by having her Illinois statutory right of redemption extended for 60 days "after the order of relief," i.e., 60 days after the filing of the Chapter 13 petition. *See* § 301. Therefore, in this proceeding, the 60–day extension period actually expired on March 24, 1992.[5] During that period, neither the Debtor nor the Chapter 13 trustee redeemed the property. However, during this period (on March 23, 1992), Midwest did go into state court as required by 35 ILCS 205/264, to present evidence and testimony to the state court in an attempt to prove that it complied with the statutory requirements for obtaining a tax deed. The state court heard the evidence and granted Midwest's request for a tax deed on April 8, 1992. Midwest decided to proceed as if the bankruptcy case in general, and the automatic stay in particular, simply did not exist or somehow did not apply to Midwest.[6]

■ The automatic stay of § 362(a) is one of the most basic protections afforded a debtor by the Bankruptcy Code. *In re Garcia*, 109 B.R. 335, 337 n. 3 (N.D.Ill.1989) *citing* 1978 U.S.Code Cong. & Admin.News 6296–97. By stopping all collection efforts by creditors against the debtor and/or the debtor's property, it gives the debtor a "breathing spell" from creditor pressure. *Id.; see also* §§ 362(a), (c). The automatic stay gives the debtor time to attempt repayment or reorganization or to obtain a discharge from debts in a Chapter 7 liquidation. The stay also protects creditors by ending the race to the courthouse and the piecemeal liquidation of the debtor's estate in favor of the fair and equal treatment of creditors. *See e.g., In re Litchfield Company of South Carolina Limited Partnership*, 135 B.R. 797 (W.D.N.C.1992). Thus, the injunction on creditor collection efforts imposed by the

---

5. If the redemption period available to the Debtor at the time of the petition exceeds 60 days, the Debtor is entitled to the full benefit of that period. *See* § 108(b)(1).

6. Section 362 provides, in part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)),

operates as a stay, applicable to all entities, of—

\* \* \* \* \* \*

(3) any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title. . . .

stay is so crucial to the bankruptcy process that "acts in violation of the automatic stay ... are void *ab initio.*" *See e.g., In re Schwartz,* 954 F.2d 569, 574 (9th Cir.1992); *Maritime Electric Co. v. United Jersey Bank,* 959 F.2d 1194 (3d Cir.1991); *In re Calder,* 907 F.2d 953, 956 (10th Cir.1990); *In re Smith,* 876 F.2d 524, 525–26 (6th Cir. 1989); *In re 48th Street Steakhouse,* 835 F.2d 427, 431 (2d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *In re Young,* 14 B.R. 809, 811 (Bankr.N.D.Ill. 1981).

 Midwest's actions were in clear violation of the automatic stay. *See* § 362(a)(2), (3), (4) & (5). Upon completion of the tax sale and payment, Midwest was issued a Certificate of Purchase. The Certificate of Purchase is a species of personal property which is "readily transferable by endorsement and which evidences a valid lien against the property." *McKeever v. McClandon,* 132 B.R. at 1006; *citing City of Chicago v. City Realty Exchange,* 127 Ill.App.2d 185, 262 N.E.2d 230 (1st Dist.1970). However, the Certificate of Purchase "does not operate to transfer any title, legal or equitable, to the tax purchaser." *Id. citing Illinois Railway Museum v. Siegel,* 132 Ill.App.2d 77, 266 N.E.2d 724 (2d Dist.1971); *see also In re Young,* 14 B.R. at 812. The Certificate does not transfer legal title until the redemption period has expired. *McKeever,* 132 B.R. at 1006; *see also In re Moreau,* 147 B.R. 441 (Bankr.N.D.Ill.1992) (for purpose of fraudulent transfer avoidance, "transfer" of property purchased at tax sale occurs upon expiration of redemption period); *but see In re Allegheny International Credit Corporation,* 128 B.R. 125, 128 (W.D.Penn.1991) (once the property is sold for taxes, the debtor no longer has an interest in the property).

 Thus, neither the tax sale nor the issuance of a Certificate of Purchase transferred property to Midwest. Instead, it merely transferred the tax collector's claim against that property. *In re Young,* 14 B.R.

at 812. The property remained that of the Debtor and became property of the estate when the debtor filed a Chapter 13 petition. *See* § 541(a)(1). Consequently, the tax purchaser, Midwest, with its Certificate of Purchase, merely held a "chose in action." *Id.* This "chose in action" was, at best, akin to an "inchoate lien" against the property. *In re Allegheny International Credit Corporation,* 128 B.R. at 128. Any effort taken by a creditor to perfect or enforce a lien following the filing of a bankruptcy petition constitutes a violation of the automatic stay. *See* § 362(a)(2), (3), and (4).

Midwest's prosecution of its petition for a tax deed constituted an attempt to perfect its inchoate lien and to take possession of property of the estate. At no time did Midwest attempt to modify the automatic stay before seeking relief in state court.[7] Accordingly, Midwest's attempts to obtain its tax deed were in violation of the automatic stay and are void *ab initio. See In re Schwartz,* 954 F.2d 569, 574 (9th Cir.1992); *Maritime Electric Co. v. United Jersey Bank,* 959 F.2d 1194 (3d Cir.1991); *In re Calder,* 907 F.2d 953, 956 (10th Cir.1990); *In re Smith,* 876 F.2d 524, 525–26 (6th Cir.1989); *In re 48th Street Steakhouse,* 835 F.2d 427, 431 (2d Cir.1987), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *In re Young,* 14 B.R. 809, 811 (Bankr.N.D.Ill.1981). *See also In re Wells Properties, Inc.,* 102 B.R. 685 (Bankr.N.D.Ill.1989) (stating in *dictum* that "the automatic stay [may] operate to prohibit the tax purchasers from proceeding in state court to obtain issuance of a deed since this proceeding would be an affirmative action prohibited by Section 362(a)(2), (3), and (4)"). Consequently, since Midwest's April 8, 1992 tax deed is void and because Midwest failed to obtain and record a valid tax deed within one year following the expiration of the period of redemption as required by 35 ILCS 205/271, Midwest's Certificate and sale on which it is based is null and void.[8] Therefore, Midwest does not have any

---

**7.** Midwest did seek leave to modify the automatic stay on August 17, 1993. However, that motion was brought more than a year after the expiration of the redemption period and thus the Certificate of Purchase was already null and void by

the time Midwest filed its motion to lift the stay. *See* text at p. 641, *infra.*

**8.** The court also notes that Midwest's tax deed is void under state law. Under Illinois law, a tax

interest in any property of the estate in this case.

## CONCLUSION

■ For the reasons stated above, the court grants the Debtor's motion to enforce the automatic stay, denies the Debtor's motion for sanctions,[9] denies Midwest's motion to lift the automatic stay, and continues Midwest's motion objecting to the claim filed on its behalf to March 30, 1994 for status.[10]

purchaser is not entitled to a tax deed unless it can prove, *inter alia,* that the redemption period has expired. *See* 35 ILCS 205/266; *see also McKeever,* 132 B.R. at 1007; *accord In re Allegheny International Credit Corporation,* 128 B.R. 125, 127 (title to the land does not pass to the tax purchaser until the passing of the period of redemption and issuance of the tax deed). In the instant case, Midwest did not have a right to proceed in state court to obtain its tax deed until March 24, 1992, the day the redemption period expired pursuant to § 108(b) of the Bankruptcy Code. However, the hearing on Midwest's petition for tax deed was held on March 23, 1992. Consequently, the tax deed issued following this hearing is void because the redemption period had not expired, and Midwest could not have possible demonstrated to the state court that all of the statutory requirements had been met. As a result, Midwest's tax deed was issued in error and is void. *See* 35 ILCS 205/266.

9. Because there is arguably some support for Midwest's position that an effort to obtain a tax deed following the filing of a bankruptcy petition does not constitute a violation of the stay, *see e.g., Tabor Enterprises v. People of the State of Ill.,* 65 B.R. 42, 47, fn. 9 (N.D.Ohio 1986); *Application of County Collector of Cook County,* 100 Ill. App.3d 534, 55 Ill.Dec. 672, 426 N.E.2d 997, *aff'd* 92 Ill.2d 400, 65 Ill.Dec. 905, 442 N.E.2d 216 (1982), the court does not find it appropriate to impose sanctions in this case. *See* Fed. R.Bankr.P. 9011. Further, there is no evidence that Midwest engaged in a "willful violation of the stay" which would warrant the imposition of sanctions under § 362(h).

10. The court finds it unnecessary to discuss at great length Midwest's argument that the Debtor is barred by the doctrine of laches. The application of laches is committed to the discretion of the court. *See e.g., Bott v. Four Star Corp.,* 807 F.2d 1567, 1576 (Fed.Cir.1986). The court must look at all the particular facts and circumstances of each case and weigh the equities of the parties. *Id.* However, to invoke the laches defense, the party asserting it has the burden of establishing two factors: the plaintiff delayed filing suit for an unreasonable and inexcusable length of time and the delay operated to the prejudice or injury of the defendant. *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). Here, the Debtor filed her emergency motion to enforce the automatic stay on April 15, 1993, approximately one year after Midwest recorded its tax deed. The court does not find this to be an unreasonable or inexcusable delay. *Id.* Nor has Midwest alleged that it has been seriously prejudiced by the Debtor's delay in filing its motion to enforce the stay. *Id.*

By the same token, because the conclusions reached in this Memorandum Opinion & Order are favorable to the Debtor, the Debtor's argument that Midwest is an adequately protected creditor in this case need not be addressed. Further, the parties have not addressed the question of whether Midwest retains an unsecured claim against the Debtor by statute or under a theory of *quantum meruit,* despite Midwest's loss of its rights against the property itself. Therefore, Midwest's objection to claim is continued until March 30, 1994 at 11:00 a.m. for status.