**In re James HALAS, Debtor.**

**Bankruptcy No. 95 B 10592.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

April 9, 1996.

John H. Redfield, Skokie, IL, for Debtor.

Kevin Hermanek, Chicago, IL, for Charles Cruz.

Richard L. Hirsch, Oak Brook, IL, for Ron Ohr.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

This proceeding relates to the bankruptcy case filed by James Halas, ("Halas" or "Debtor"), under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Ron Ohr, Sr. ("Movant" or "Ohr"), a creditor in this case, moved to have the automatic stay under 11 U.S.C. § 362 annulled retroactively. Movant allegedly bought the real estate taxes on Debtor's residence at a county tax sale, and now seeks to obtain a tax deed on that property in the state court. The annulment was sought to allow him to retain his legal rights under notices he served and a petition for a tax deed he filed in state court during Debtor's bankruptcy case, but without knowl-

edge of this bankruptcy proceeding. His actions in that regard in ignorance of the bankruptcy stay may allow him to obtain ownership of Debtor's residence in the tax proceeding. Debtor contended that the home where he resides is part of the bankruptcy estate and any act taken by Ohr to gain ownership of that property violated the automatic stay and was null and void.

The Motion was answered by Debtor and also opposed by one Charles Cruz ("Cruz"). Cruz bought Debtor's home at a foreclosure sale. He now seeks to defend the rights he obtained at that sale by opposing Ohr's Motion. If Ohr obtains a tax deed, that deed will trump Cruz's title obtained through the foreclosure.

Trial was held on the Motion. Having considered the oral testimony, documentary evidence, arguments of counsel in support of their respective positions, and all relevant pleadings filed in connection with this proceeding, the following Findings of Fact and Conclusions of Law are made and entered. Based thereon, an order has been entered, granting annulment in part and modifying the stay to permit Ohr and Cruz to participate fully in the state court tax proceeding to pursue their claims against Debtor's home and against each other.

### FINDINGS OF FACT

#### Debtor's Second Bankruptcy

Mr. Halas began this case by filing a voluntary petition on May 25, 1995 (the "Filing Date").[1] This proceeding is Debtor's second bankruptcy. The first was filed under Chapter 13 on January 13, 1995, and Halas's Plan was confirmed therein. However, that case was dismissed on April 4, 1995, for his failure to make the payments due under that confirmed Plan. As of the filing date of this second proceeding, Halas held title to a single family home which he then used, and still uses, as a residence. The home is located at 1726 Potter Road in Park Ridge, Illinois (the "Property").

At trial, Debtor produced a reorganization plan which he claimed to be feasible. It was stipulated by the parties at trial that Debtor had equity in the Property. Debtor needs the Property to reorganize, for he has no other home available to him and also because it has the potential of being income-producing property. As proof that the second bankruptcy was filed in good faith and to ensure that his Plan of payments is feasible, Debtor testified that he is willing to use his exempt retirement fund assets to pay some debts under that Plan. A mortgage broker employed by Midwest Mortgage Co. testified that, if the issues clouding title to the Property are resolved, Midwest Mortgage Co. will loan Debtor $103,250 against the Property to enable Debtor to remove all clouds on the title to his home (which would be possible if such loan were added to his exempt assets). Midwest Mortgage Co. has issued a letter to this effect. However, no actual refinance agreement existed at the time of the trial, and title remains as clouded by the state court mortgage foreclosure and real estate tax sale proceeding, described below.

#### The Foreclosure Proceedings

Prior to the filing of either bankruptcy, the Property was encumbered by a mortgage in favor of Debtor's sister, Linda Papajcik ("Papajcik"), as collateral for a note executed by the Debtor and payable to Papajcik. Papajcik declared the note to be in default and filed proceedings to foreclose the mortgage. A judgment of foreclosure was entered against the Debtor and in favor of Papajcik before the current bankruptcy was filed. The foreclosure judgment directed that the Property be sold in satisfaction of the debt owed by Debtor to Papajcik.

Pursuant to that judgment, on May 25, 1995, the Property was sold for $130,000 at public auction to Charles Cruz ("Cruz"). Cruz paid $130,000 to the selling officer and received a judicial deed with respect to the Property. At the time of the May 25, 1995, foreclosure sale, the parties knew that the first Halas bankruptcy had been dismissed a

---

1. Mr. Halas originally filed pro se, but soon retained counsel to represent him in this and all matters relating to his Chapter 13 proceeding, until that counsel was allowed to withdraw following the hearing referred to herein.

month earlier. However, neither Papajcik nor Cruz were aware that Halas had filed this second bankruptcy case only minutes before the foreclosure sale of the Property. Upon learning of the second Halas bankruptcy, counsel for Papajcik moved here for stay annulment so that the foreclosure sale could be validated in state court. That motion was granted and Papajcik's counsel submitted an order to be signed. While that order was intended to effect annulment of the automatic stay in Debtor's new bankruptcy proceeding, it bore the case number from Debtor's first bankruptcy that had been dismissed. Thus, the order entered citing the wrong case number did not have any legal effect as to the automatic stay brought into effect by Halas's second bankruptcy filing. As a result, however, the lawyers representing Papajcik and Cruz believed the bankruptcy problem was solved, and went on to complete the foreclosure sale in state court. Most of Cruz's payment of $130,000, held in suspense pending clearance of the bankruptcy problem, was released to Papajcik to pay off her mortgage (the rest was held for Mr. Halas as former owner). Cruz then obtained a judicial deed. That effort inadvertently violated the statutory automatic stay created under 11 U.S.C. § 362 by filing of Halas's second bankruptcy case.

By September 12, 1995, Cruz's counsel (Mr. Kevin Hermanek) found out about the error of Papajcik's lawyer in preparation of the annulment order. Mr. Hermanek filed his own motion to have the automatic stay annulled in the second case. This was intended to validate the May 25, 1995, foreclosure sale by entry of an annulment order in the correct bankruptcy case. An order was entered on October 19, 1995, in this bankruptcy proceeding annulling the stay with respect to the May 25, 1995, foreclosure sale of the Property to Cruz. On November 2, 1995, Debtor filed a notice of appeal with respect to the annulment order. On December 15, 1995, a further order was entered in this bankruptcy proceeding staying any further action by Cruz to obtain possession of the Property pending resolution of Halas's appeal of the October 19 order, because Debtor had put up a supersedeas bond. Debtor thereby was allowed to reside at the Property during that appeal which remains pending.

### The Tax Sale Proceedings

As a result of Debtor's failure to pay Illinois real estate taxes in the first quarter of 1992, the Treasurer of Cook County obtained a judgment and order of sale as to the Property in the Circuit Court of Cook County, pursuant to 35 ILCS 200/21–150 to 200/21–185. The Treasurer then sold this judgment to Ron Ohr, Sr.[2] at a public tax sale held February 4, 1993. *See McKeever v. McClandon,* 132 B.R. 996, 1006–08 (Bankr.N.D.Ill. 1991), for a thorough discussion of the Illinois tax sale process under 35 ILCS 200/1–1 *et seq.*

Ohr thereby purchased the taxes on the Property for the sum of $1,223.72. This took place over two years before Cruz bought at the mortgage foreclosure sale. As a result of his purchase, Ohr received a "Certificate of Purchase" under 35 ILCS 200/21–250. After issuance of that Certificate, a title owner of the tax delinquent property has two years in which to redeem the taxes. 35 ILCS 200/21–345 & 350. A tax purchaser has the right to extend the owner's redemption period, provided that adequate notice is provided to the delinquent tax payer as to when the redemption period will expire. 35 ILCS 200/21–385.

Under the Illinois Property Tax Code, a tax buyer can become the title owner of the tax delinquent property through petitioning for and obtaining a tax deed. After the redemption period expires, the holder of the Certificate of Purchase has one year to obtain a tax deed for the property or the Certificate becomes void. *Id.*

To obtain a tax deed, the Illinois Code required the Ohrs to serve notices of the tax sale and of the redemption period. One such notice is a "Redemption Notice" which must

---

**2.** Ron Ohr, Sr. is in the business of buying taxes on various tax delinquent properties. In this business, he works together with his son Ron Ohr, Jr. Both Ohrs testified during the trial.

The Motion involved here was filed under the name of Ron Ohr, Sr. although many of the relevant acts described were undertaken by both Ohrs by virtue of their business relationship.

be sent out to the tax delinquent owners within five months of the tax sale, notifying of the sale and right to redeem the property within the statutory period. *See* 35 ILCS 200/22–5. On June 4, 1993, the Clerk of Cook County mailed a notice of the tax sale, prepared by Ohr, to James Halas at 1726 Potter Rd., Park Ridge, Illinois, 60068, the address of the Property. *See* Ohr Exhibit No. 2. While the Ohrs were aware that the Papajcik foreclosure proceeding was stayed by Debtor's first petition, they did not check on whether Debtor filed a new case after his first bankruptcy case was dismissed. Moreover, while the Ohrs learned about the foreclosure proceeding filed by Papajcik, they did not follow up to learn who purchased at the foreclosure sale, and therefore never learned about Cruz or notified Cruz of their petition to obtain a tax deed.

On December 12, 1994, Ohr extended the Redemption Date to August 9, 1995, under 35 ILCS 200/21–385. On June 5, 1995, Ohr further extended the Redemption Date to October 16, 1995. Also on June 5, 1995, and during pendency of Debtor's second bankruptcy, Ohr filed a Petition for Tax Deed in the Circuit Court of Cook County, County Division, Case No. 95 CoTD 1664. That petition was timely filed under the Illinois Property Tax Code. 35 ILCS 205/266.

The Illinois Property Tax Code requires the tax buyer to notify the tax delinquent party of the expiration of the redemption period by publication and by using the Sheriff to make personal service of the notice. In addition, the tax buyer must mail notice to the Clerk of the Circuit Court of the Cook County of the impending expiration of the redemption period. The Clerk in turn is to notify the tax delinquent party of the expiration date by registered mail. 35 ILCS 200/22–25.

The deputy sheriff attempted to serve Debtor with Ohr's notice on six different days between June 10, 1995, and June 18, 1995. On each of those occasions, he was unable to make contact with Mr. Halas. Ohr Exh. 11. However, notice that a Petition for Tax Deed had been filed and of the June 5, 1995, was published in the *Chicago Daily Law Bulletin* on June 19, 20, and 21, 1995.

Ohr Exh. 13. Moreover, on June 13, 1995, the Clerk of the Circuit Court of Cook County mailed to Debtor at 1726 Potter Rd., Park Ridge, Illinois, 60068, the address of the Property where he lived, notice that the Property had been sold because of delinquent taxes and that Debtor had until October 16, 1995, to redeem from that sale. Ohr Exh. 10. Halas thereby received a copy of Ohr's notice.

All this occurred while the automatic stay was in place due to Halas's second bankruptcy filing on May 25, 1995.

On June 5, 1995, when the Ohrs applied in the state court for a tax deed, neither had knowledge of the Debtor's second pending bankruptcy. Ron Ohr, Jr. testified that, as part of searching for all persons with an interest in the Property, he checked with the Clerk of the Bankruptcy Court with the case number of Debtor's first case to see if that bankruptcy proceeding had been dismissed and found that to be so. However, he did not search the name index in the Clerk of Bankruptcy Court for Debtor's name, a search that would have revealed the second bankruptcy filing by Mr. Halas.

On November 16, 1995, the Ohrs filed an Application in case no. 95 CoTD 1664 in the County Division of the Circuit Court of Cook County for issuance of a Tax Deed. They did not become aware that Debtor had filed his second bankruptcy proceeding until after November 29, 1995.

On November 29, 1995, the Ohrs proceeded to prove-up their Petition for an Issuance of a Tax Deed before the Honorable Judge Staniec in the Circuit Court of Cook County. Without knowledge of this bankruptcy proceeding, that judge determined that the time to redeem from the tax sale had expired, no redemption had been made, that due diligence had been conducted by the Ohrs, and that Ron Ohr, Sr. was therefore entitled to a tax deed.

### Attempted Redemption of Taxes

During this period, redemption of the delinquent real estate taxes became a concern to Cruz, who had obtained a judicial deed out of the mortgage foreclosure case. On Au-

gust 16, 1995, Cruz's attorney obtained an estimate of redemption from Taxes Unlimited (a company in the business of giving property tax estimates), which stated that the redemption amount was $3,924.77. The redemption estimate issued by Taxes Unlimited also stated that the deadline for redemption of property taxes on the Property was December 16, 1995. Relying on that, Cruz did not redeem the taxes on the Property before the actual redemption deadline of October 16, 1995.

Cruz's lawyer, Mr. Hermanek, attempted to redeem the delinquent taxes, believing he had until December 16 to do so. On December 15, 1995, Hermanek went to the office of the Cook County Clerk and paid the necessary amount to redeem. The Cook County Clerk issued Hermanek a Certificate of Deposit For Redemption. The Ohrs have since filed a petition in the Circuit Court to expunge Cruz's redemption of the taxes as having been made after the deadline.

Learning of Debtor's new bankruptcy filing, Ron Ohr, Sr. moved here to have the automatic stay annulled under § 362(d) so that notices he served after the current bankruptcy was filed, his petition for tax deed, and the state court tax deed proceeding itself, would be validated. For reasons set forth herein, the annulment was granted only as to the notices served by Ohr and his filing for the tax deed. Therefore, subsequent state court proceedings in the tax deed proceeding remain a nullity at law. However, the automatic stay was modified, so that Ohr's petition for a tax deed may be reheard, this time with Cruz on notice and authorized by this Court to participated in the effort to obtain rights in the Property, and with Debtor on notice that he may participate and assert any rights he has without bankruptcy protection.

### Jurisdiction

Jurisdiction lies over this matter under 28 U.S.C. § 1334(b) as a matter arising under § 362 of the Bankruptcy Code. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) as a motion to terminate, annul, or modify the automatic stay. This proceeding is before the Bankruptcy Court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring all bankruptcy cases and proceedings to this Court.

### CONCLUSIONS OF LAW

Section 362(a) of the Bankruptcy Code provides that a petition filed under Title 11 operates as a stay of:

> (1) the commencement or continuation including the issuances or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this Title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).

■ Section 362(a) provides for a broad stay of litigation against the debtor. The automatic stay is a self-executing provision of the Code and begins to operate nation-wide, without notice, once a debtor files a petition for relief. *In re A.H. Robins Co., Inc.*, 63 B.R. 986, 988 (Bankr.E.D.Va.1986), *aff'd*, 839 F.2d 198 (4th Cir.1988), *cert. denied*, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988).

■ The automatic stay under § 362 is one of the most basic protections afforded a debtor by the Bankruptcy Code. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–342 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, 5787 at 5890 & 6296–6298. By stopping creditors' collection efforts against debtor's property, debtor is granted a "breathing spell" from creditor pressure. *Id.* The stay also protects creditors by curtailing a "race to the courthouse" and the piecemeal liquidation of debtor's estate in favor of fair and equal treatment of creditors and of preserving "going concern" value. *Id.*

Debtor and Cruz argue that the automatic stay rendered void the notices served by the Ohrs, and also their tax deed petition.

Debtor also contends that he did not redeem the taxes in time because of lack of notice of the tax sale (despite receipt of at least one notice of that sale). Cruz claims

that he made an honest mistake in believing that there was more time to redeem the taxes, and Debtor supports that position. Consequently, they argue that the stay should not be annulled since Cruz's late redemption was valid and the Property is still part of Debtor's estate.

Ron Ohr, Sr. asserts that a tax sale cuts off any interest a delinquent taxpayer may have in property, save for a right to redeem. Consequently, he argues that the automatic stay does not apply here because the Property is no longer part of Debtor's estate.

### Applicability of the Automatic Stay

■ The first issue presented is whether the automatic stay applies to actions by a tax purchaser desiring to follow Illinois Tax Code procedures to obtain a tax deed. If after the 1993 tax sale, the Property ceased to be part of Debtor's estate, the automatic stay does not apply. Within this Circuit there has been some disagreement as to the nature of a tax sale under Illinois law. Several Bankruptcy Judges and District Judge Reinhard have held that debtors who own property sold at a tax sale maintain enough of a property interest after a tax sale to have such property protected by the automatic stay provisions of § 362. District Judge Plunkett disagrees. *See In re Lucille Jackson*, 173 B.R. 637 (Bankr.N.D.Ill.1994) (Ginsberg, J.) *rev'd, Jackson v. Midwest Partnership (In re Jackson)*, 176 B.R. 156 (N.D.Ill. 1994) (Pluncket, J.); *In re Milne*, 185 B.R. 277 (Bankr.N.D.Ill.1995) (DeGunther, J.) *aff'd, Milne v. Johnson (In re Milne)*, 185 B.R. 280 (N.D.Ill.1995) (Reinhard, J.). Bankruptcy Judge Wedoff implicitly agreed with the proposition that property sold at a tax sale remains part of Debtor's estate in *In re Lipuma*, 167 B.R. 522 (Bankr.N.D.Ill. 1994) (Wedoff, J.), where he annulled the automatic stay retroactively to permit parties to litigate issues about the adequacy of tax sale notice in state court.

Judge Plunkett ruled that a tax sale under Illinois law divests debtor of ownership in tax delinquent property, and therefore acts taken for the purpose of obtaining a tax deed during the pendency of a bankruptcy case do not violate the automatic stay. *Jackson v.*

*Midwest Partnership (In re Jackson)*, 176 B.R. 156 (N.D.Ill.1994) (Plunkett, J.). He therefore reversed Bankruptcy Judge Ginsberg, who had reasoned in *In re Lucille Jackson* that, until a tax deed is issued, tax delinquent property remains part of debtor's estate. As discussed below, the reasoning of Judge Ginsberg is followed here.

In *In re Lucille Jackson*, 173 B.R. at 637–40, an investment partnership purchased Debtor's taxes on her home. After the tax sale, Debtor filed for bankruptcy protection. The investment partnership sent out the required notices under state law and sought to obtain a tax deed. The issue in *In re Lucille Jackson* was whether the investment partnership's application for a tax deed was an act in violation of the automatic stay. Judge Ginsberg saw the Certificate of Purchase issued at a tax sale as a form of personal property "which is readily transferable by endorsement and which evidences a valid lien against the property." *Id.* at 640 (citations omitted). The Certificate of Purchase does not itself transfer title to the tax purchaser until the redemption period expires. *Id.* at 641 (citations omitted). This conclusion was by analogy supported by reference to authority holding, for purposes of fraudulent transfer avoidance, that "transfer" of property purchased at the tax sale occurs upon expiration of the redemption period. *Id.* citing *In re Moureau*, 147 B.R. 441 (Bankr.N.D.Ill. 1992). Judge Ginsberg *In re Lucille Jackson* ruled that the Certificate of Purchase merely transferred the tax collector's claim against the property and was therefore at best akin to a "chose in action." *Id.* citing *In re Young*, 14 B.R. 809, 812 (Bankr.N.D.Ill. 1981).

Adopting the reasoning of *In re Lucille Jackson*, Bankruptcy Judge DeGunther, in *In re Milne* (later affirmed by Judge Reinhard), found that a tax purchaser is a creditor holding a lien in bankruptcy. *In re Milne*, 185 B.R. 277, 279 (Bankr.N.D.Ill. 1995), *aff'd, Milne v. Johnson (In re Milne)*, 185 B.R. 280 (N.D.Ill.1995) (Reinhard, J.). His reasoning was that "[t]he characterization of Certificate of Sale as a lien, combined with the Code's definition of claim leaves no doubt that the tax purchaser ... is in fact a

creditor in bankruptcy." *Id.* at 279. Therefore, he found that the automatic stay must be modified before the creditor was allowed to file for a tax deed in state court. *Id.*

In *McRoberts v. S.I.V.I. (In re Bequette),* 184 B.R. 327 (Bankr.S.D.Ill.1995), Judge Meyers, citing Illinois authorities, agreed with the view that issuance of a Certificate of Purchase at a tax sale "does not affect the delinquent property owner's legal or equitable title to the property, which remains with the owner." *Id.* at 336 (citations omitted). Consequently, he concluded that

> [i]f a bankruptcy intervenes during the running of the redemption period, the automatic stay prevents any action by the tax purchaser to divest the delinquent property owner of an interest in the property.

*In re Bequette,* 184 B.R. at 336.

Judge Plunkett reversed Judge Ginsberg's holding in *In re Lucille Jackson,* finding that under Illinois law a Certificate of Purchase conveys an ownership interest in the property, not merely a lien. *Jackson v. Midwest Partnership (In re Jackson),* 176 B.R. 156 (N.D.Ill.1994). He reasoned that the automatic stay does not apply to a petition for a tax deed since § 362(b)[3] of the Bankruptcy Code exempts from the automatic stay interests in property which could be perfected under state law against the debtor. *Id.* at 157. Alternatively, Judge Plunkett also applied the rationale of *In re Tynan,* 773 F.2d 177, 179 (7th Cir.1985).[4] He concluded that under the Illinois Property Tax Code, as under the Illinois Mortgage Foreclosure Act, after the redemption period expires, debtor's estate loses any interest in the property and

a petition for a tax deed at that time does not violate the automatic stay. *Jackson v. Midwest Partnership (In re Jackson),* 176 B.R. at 157.

Judge Plunkett's reasoning in *Jackson v. Midwest Partnership (In re Jackson),* 176 B.R. 156 (N.D.Ill.1994), should not be followed. The weight of state and bankruptcy court decisions as cited by Judge Ginsberg suggests that in Illinois a tax sale resulting in issuance of a Certificate of Purchase does not affect the delinquent property owner's legal or equitable title to the property. Legal and equitable title remains with the owner, but gives the tax purchaser the right to receive payment if the property is redeemed within the redemption period and to receive title if there is no timely redemption. Until the redemption period expires, the owner can retain title by redeeming. After that period ends, title is lost. Thus, in this case, during the redemption period, the property remained that of the Debtor and was property of the estate protected by the stay when Debtor filed his second bankruptcy on May 25, 1995.

Judge Plunkett was faced with the issue of whether a Certificate of Purchase acquired before the bankruptcy petition may be converted into a tax deed through a state court proceeding after the redemption period has expired, but while the automatic stay is still in effect. *Jackson v. Midwest Partnership (In re Jackson),* 176 B.R. at 156. Here, the issue is whether the tax purchaser could take steps to perfect his title in Debtor's property prior to expiration of the redemption period. (The notices were sent out by the Ohrs and

---

3. Section 362(b) of the Bankruptcy Act provides: The filing of a petition under section 301, 302, 303 of this title does not operate as a stay (3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under 546(b) of this title.
 Section 546(b) states in pertinent part:
 The rights and powers of a trustee are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.
 11 U.S.C. § 362(b), 546(b).

4. In *Goldberg v. Tynan (In re Tynan),* 773 F.2d 177 (7th Cir.1985), debtors were defendants in a mortgage foreclosure proceeding. The property was sold and debtors had six months to redeem. *Id.* at 178. Debtors filed a petition for bankruptcy on the last day of their redemption period. *Id.* Two days later a deed was issued to the buyer and debtors sought to have that deed expunged since it had purportedly violated the automatic stay. *Id.* The Seventh Circuit held that after a foreclosure sale debtor only kept a right of redemption and that a bankruptcy petition does not toll the mortgage foreclosure redemption period. Thus, the Court held that, after the redemption period expires, the purchaser in a foreclosure sale does not need a bankruptcy court's approval to obtain a tax deed. *Id.* at 179.

their petition for tax deed was filed prior to expiration of the redemption period.) While that difference in factual setting provides some distinction here from the problem faced in *Jackson,* the reasoning followed in this opinion applies both before and after expiration of the redemption period until the tax deed issues.

### Retroactive Relief from the Automatic Stay

▮▮▮ Although the Ohr notices that were served and his petition for a tax deed that was filed violated the automatic stay, those acts may still be effective if the stay is retroactively annulled. The federal circuits are divided about the legal status of acts in violation of the automatic stay. Case authority in the Seventh Circuit and several other circuits suggest that acts in violation of the automatic stay are void *ab initio, In re Siciliano,* 13 F.3d 748, 750–51 (3d Cir.1994); *Matthews v. Rosene,* 739 F.2d 249, 251 (7th Cir.1984), *In re Albany Partners,* 749 F.2d 670, 675 (11th Cir.1987) while two other circuits view such acts as only being voidable. *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 909–11 (6th Cir.1993); *Sikes v. Global Marine, Inc.,* 881 F.2d 176, 178–179 (5th Cir.1989). However, whichever rule applies, bankruptcy courts have authority to enter orders retroactively invalidating the automatic stay as to a specific post-petition acts done in ignorance of the stay. *See Siciliano,* 13 F.3d at 750–52; *Easley,* 990 F.2d at 909–12; *In re Albany Partners,* 749 F.2d 670, 675–76 (11th Cir.1984); *In re Lipuma,* 167 B.R. 522, 525 (Bankr.N.D.Ill.1994) (Wedoff, J.).

▮▮▮ Principles of equity support the granting of retroactive relief from the automatic stay whenever a creditor without actual knowledge of applicability of the automatic stay would be unfairly prejudiced if the debtor could raise the stay as a defense. *In re Lipuma,* 167 B.R. 522, 525 (Bankr.N.D.Ill. 1994) (Wedoff, J.); *In re Confidential Investigative Consultants, Inc.,* 178 B.R. 739, 751 (Bankr.N.D.Ill.1995) (Schmetterer, J.). Such is the situation here.

At the time they took steps to obtain a tax deed, the Ohrs were only aware of Debtor's first bankruptcy case and had no knowledge of the second bankruptcy filing. Evidence showed that no notice was sent to them by Debtor after he filed his second case. Mr. Halas testified that he was not aware that the taxes had been sold and thus he did not list the Ohrs in his schedules of creditors, although in fact he had been sent notice of the tax sale. Even after receiving the Ohr notice, Mr. Halas did not notify the Ohrs of his second bankruptcy filing or amend his bankruptcy schedule. The Ohrs were therefore not notified by the Clerk of the Bankruptcy Court of the second bankruptcy filing.

To compound the problem, when Ron Ohr was doing his due diligence search in order to serve notice of petition for a tax deed, he did not check the name directory into the open cases in the Bankruptcy Clerk's Office to see if Halas had refiled. He only checked to see if the Debtor's first case was dismissed. Ron Ohr, Jr. would have discovered the second Halas petition had he checked the name directory. Due to that omission, and the rest of this unhappy history, the Ohrs are found not to have had any knowledge of the second Halas bankruptcy when they pursued efforts to obtain title to Debtor's property.

Ron Ohr, Sr. would be unfairly prejudiced if the stay were not annulled here, at least in part. Absent annulment as to the notice which Ohr sent during the automatic stay and his filing for a tax deed, then he would in effect be deprived of the right he possessed in May of 1995 to seek modification of the stay to obtain a tax deed at those times when he still had time under Illinois law to serve the notice and apply for a tax deed. If Ohr had a valid legal basis to modify the stay when he served the notices and when he filed for a tax deed, then not annulling the stay at this time would prejudice his rights as accorded under the Illinois Property Tax Code. *See In re Lipuma,* 167 B.R. 522, 525 (Bankr. N.D.Ill.1994) (creditor unfairly prejudiced where automatic stay raised as a defense to tax sale, but tax buyer had valid legal basis to modify stay at time of tax sale). His time to apply for that tax deed has now expired under Illinois law.

### Ron Ohr, Sr. Had a Legal Basis for Modifying the Stay

All parties here stipulated to the fact that Debtor has equity in the Property. It has been found that he needs his home to manage his life and debt. Therefore, Ohr had to show grounds for modifying the automatic stay under 11 U.S.C. § 362(d)(1), rather than § 362(d)(2). The stay may be modified for several reasons, including "cause" under § 362(d)(1):

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).

 The Bankruptcy Code's only suggestion of what "for cause" stands for is "lack of adequate protection" of a creditor's interest. However, courts and commentators have found this illustration to be exemplary and not exhaustive. *See* Robert E. Ginsberg & Robert D. Martin, 1 Bankruptcy: Text, Statutes, Rules § 3.05[b], at 3–56 (3d ed. Supp.1994); *Crocker National Bank v. American Mariner Industries (In re American Mariner Industries),* 27 B.R. 1004, 1007 (9th Cir. BAP 1984). Other than lack of adequate protection, "cause" under § 362(d)(1) has been developed on a case-by-case basis. *Martin v. Martin (In re Frank),* 84 B.R. 372, 374 (Bankr.E.D.Penn.1988). Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay. *Chapman v. Citicorp Mortgage,* 1992 WL 59289, *3 (N.D.Ill.1992). The decision whether to modify the stay for cause under § 362(d)(1) is committed to sound discretion of the bankruptcy judge. *In re C & S Grain,* 47 F.3d 233, 237 (7th Cir.1995).

In this case, it is clear that if Ron Ohr, Sr. were not allowed to annul the stay retroactively, he would lose rights accorded him by Illinois law which he obtained by buying the taxes. According to 35 ILCS 200/22–20, to obtain a tax deed, he must first petition for a deed "at any time within 5 months but not less than three months prior to the expiration of the redemption period," and notice of such hearing must be given. Thus, he had a specific window of time in which to apply for a tax deed and send out the required notices. In this case, the redemption period expired on October 16, 1995, so Ohr applied for the tax deed within the prescribed time window under state law. No statute or case law decision has been found stating that his statutory window of opportunity was tolled under state or bankruptcy law by the automatic stay under 11 U.S.C. § 362. It is therefore likely, though not certain, that Ohr's window of opportunity may not have been tolled by the automatic stay.

Ohr should not have to bear the burden of this uncertainty in the law. If the automatic stay is not annulled as to the notices served after May 25, 1995, and as to the petition for a tax deed, Ohr may lose his right to apply for a tax deed and would therefore be prejudiced if the stay were not annulled.

Furthermore, Debtor would not have been harmed had the automatic stay been modified prior to the Ohrs' notices being mailed. Modification of the automatic stay at that time would have allowed adjudication of notice and redemption issues. Such litigation would ultimately have decided whether the Property is part of Debtor's estate that can be included in his Plan.

Therefore, at the time Ohr served the notices and filed for a tax deed, if a motion would have been made here, the automatic stay would have been modified for cause.

The fact that the Ohrs did not search the name index in the Clerk's Office when he was doing his due diligence research, and did not pursue the foreclosure to find out about Cruz's interest gives one pause but does not entirely shift the equities against them. The Debtor and Cruz had some burden to protect their own interests, Debtor by notifying the

Ohrs of his new bankruptcy case, and Cruz by telling them about his acquired interest.

Thus, since the Ohrs did not know that Debtor had filed a second bankruptcy petition, and because they had a valid legal cause for modifying the automatic stay, the automatic stay was annulled as to the relevant notices the Ohrs served and as to their filing of a petition for tax deed.

### Stay not Annulled as to Tax Deed Proceeding

■ Ohr also seeks to have the automatic stay fully annulled so that the tax deed proceeding in state court on June 5, 1995, and its result would be validated here. In other words, Ohr would like to have the result of the June 5 proceeding stand although that proceeding was being undertaken in unintentional violation of the automatic stay.

Ohr has succeeded in partly annulling the automatic stay retroactively because he lacked knowledge of the second bankruptcy petition and because equity sided with him. However, equity is not fully on Ron Ohr's side regarding annulment of the automatic stay with respect to the June 5, 1995, proceeding in the Circuit Court because Mr. Cruz was not noticed. Cruz's interest as purchaser at the foreclosure sale could easily have been searched by the Ohrs, and his life savings paid at that sale entitles him to a fair chance to contest the Ohrs' claim before the state court now. As a result, the stay will not be annulled as to those proceedings, which are found to be void and must be repeated, regrettably in light of the heavy work load in the affected state court.

While Ron Ohr, Sr. has established in these proceedings that he did not know of the second bankruptcy filing, he would not be unfairly prejudiced if the automatic stay voids the June 5 proceeding in state court. Although he may face some inconvenience having to motion up again his petition for a tax deed, he will not lose any of his rights.

Most significant, Cruz was not given notice about pendency of the tax deed petition. Since the Ohrs were aware that a foreclosure proceeding had been initiated, they could have found out about the foreclosure sale after they learned the first bankruptcy case was dismissed. Yet, they made no effort to learn the outcome of the foreclosure sale. The Ohrs should have looked further to find out about Cruz's interest. That they did not do so is disturbing. It might well disturb the state court. But, as Bankruptcy Judge Wedoff properly ruled in *In re Lipuma*, 167 B.R. 522 (Bankr.N.D.Ill.1994), and in *In re Wells Properties*, 102 B.R. 685 (Bankr.N.D.Ill. 1989), the issue as to proper notice under state law as to tax sales is best left to state courts that are expert in this area of Illinois law.

The Ohrs could also have found out about Debtor's second bankruptcy, and this is another reason why the stay will not be annulled past any actions which Ohr was required to take within the time "window" created by the Illinois statute. It is very easy to find out if somebody has refiled for bankruptcy protection. Without deciding the issue of whether the Illinois Tax Code creates a legal burden on persons petitioning for a tax deed to search the name index in the Bankruptcy Court for a second filing, in this case failure to do so casts doubt on whether equities are fully with the Ohrs for purposes of considering complete annulment.

It is common for Chapter 13 debtors to file serial bankruptcies to save their homes or business properties from foreclosure. Ohr could easily have found out about Halas's second case. He could then have sought modification of the automatic stay to pursue his petition for tax deed. Had he done so and also notified Cruz, perhaps the parade of errors that led to this opinion and possible economic harm to different parties could have been avoided.

■ However, the stay is modified so as to allow the state court to proceed again to adjudicate Ohr's petition for a tax deed. This time both Cruz and Debtor will have the opportunity to participate in that proceeding. Whether Debtor can use the Property in a plan so as to effectively reorganize depends on whether Ohr's petition for a tax deed succeeds in state court as well as whether or not Debtor can defeat Cruz on appeal of the earlier annulment order validating the fore-

closure sale. It is clear that the place to adjudicate all remaining non-bankruptcy issues is in state court, and therefore the automatic stay is modified to allow Ohr to pursue a tax deed, to allow Debtor to resist the tax deed, and to allow Cruz to pursue his interests as well. If Debtor loses there, his chances to confirm a plan and successfully reorganize are bleak.

### State Court to Adjudicate Cruz's Late Redemption

 Debtor and Cruz argue that the redemption period should be equitably extended to the time that Mr. Hermanek, Cruz's attorney, redeemed the taxes. Debtor claims that Hermanek's error in relying on the Taxes Unlimited redemption estimate was made in good faith.[5] In support Debtor cites *In re Garth,* 103 B.R. 957 (Bankr.N.D.Ill.1989), and *In re Glenn,* 760 F.2d at 1442 (6th Cir.1985), for the proposition that such a good faith mistake should equitably extend the redemption period.

This argument rests on the principle that redemption is looked on with favor and the redemption laws are given liberal construction so long as the purchaser is not injured. Citing *Mohr v. Sibthorp,* 395 Ill. 418, 424, 69 N.E.2d 487, 490 (1946), the court in *In re Wells Properties,* stated:

> [T]here appears to be a well-established rule in Illinois that if a redemption of property from a tax sale is attempted in good faith by the tender of the amount required by the county clerk, then an insufficiency in the amount will not prevent the redemption from being effective, even if the party attempting redemption was aware of the facts that would have indicated the correct amount.

103 B.R. 957 (Bankr.N.D.Ill.1989) (Wedoff J.).

This rule may not be applicable here. The cases cited applied it where some mistake was made by the government agency charged with tax collection. Halas and Cruz did not cite a case where the tax delinquent party forgot to redeem or misunderstood the

redeeming process or mistakenly relied on a third party's erroneous advice. However, this issue should also be decided by the state court.

### CONCLUSION

For reasons stated herein and by separate order that has been entered, the automatic stay was annulled as to notices the Ohrs served while Debtor's second bankruptcy case was pending, and also as to Ron Ohr, Sr.'s filing of his petition for a tax deed. The automatic stay, however, is not annulled as to the tax deed proceedings before the Circuit Court of Cook County, although it was modified so that Ron Ohr, Sr. can once again seek a tax deed from that Court on notice to Debtor and Cruz, so they can defend their interests.

---

5. The evidence did not permit a finding as to whether or not Mr. Hermanek actually relied on erroneous advice from Taxes Unlimited; proofs were not fully developed on that point to permit a finding either way.